[No. 7925. Department One. July 8, 1909.]

LAURA J. GRAHAM, *Appellant*, v. E. T. GRAHAM, *Respondent*.[1]

DIVORCE—DECREE—VACATION—DURESS. The courts have jurisdiction to vacate a decree of divorce for fraud in obtaining it, and a wife is entitled to the vacation of a decree, where she moved therefor within one month, and it appears that she was induced to enter a general denial and make no contest through the duress of threats by the husband to commit suicide, which were false and made to conceal his intention to marry another, and which affected her health and nervous system, she having a meritorious defense to the action.

Appeal from a judgment of the superior court for King county, Tallman, J., entered November 30, 1908, dismissing

[1]Reported in 102 Pac. 891.

a petition to vacate a decree of divorce, upon sustaining a demurrer thereto. Reversed.

*Fred C. Brown*, for appellant.

*J. D. Bauer*, for respondent.

Chadwick, J.—On September 1, 1908, a decree of divorce was entered in the superior court of King county, dissolving the bonds of matrimony then existing between appellant and respondent. On October 1, 1908, appellant filed her petition under the statute, praying for an order vacating the decree, and for permission to withdraw her answer and defend the suit. For the sake of the discussion of the only legal proposition involved, we deem it necessary to set out, in part at least, the facts alleged in her petition. She sets up the original complaint, in which her husband had asked a divorce upon the ground that she had treated him with extreme cruelty, had refused to live with him, had heaped personal indignities upon him, rendering his life burdensome, and that there was such incompatibility of temper between them that they could no longer live together as husband and wife. No facts were alleged in his complaint that would have saved the pleading from an attack by general demurrer. To this complaint she had entered a general denial. The trial was had without her presence, and a decree entered, so far as the record shows, upon the respondent's testimony alone.

She further alleges that, prior to November, 1907, the relations existing from the time of their marriage in March, 1882, had been most amicable; that she had been a dutiful wife, and that he had been a fond, faithful, and indulgent husband; that from the time mentioned he began to grow cold and distant, and cease to manifest that love and affection that had so long characterized his conduct toward her; that in June, 1908, he requested her to procure a divorce; that this she refused to do; that his inattention and neglect then became more marked, until finally, with intent to deceive her as to his real motive, he more than once

threatened to commit suicide unless she consented to allow
him to procure a divorce; that he procured a revolver and
made a pretended attempt to take his life; that his conduct so
terrorized her and their children that she was reduced in
health and so shocked in her nervous system that she was in-
duced to believe that he would commit suicide, and so she
yielded to his demand; that thereafter, on August 28, he sent
an attorney, whom he had employed, to her with a copy of the
summons and complaint, together with an answer which he
had prepared; that she signed the answer; that respondent
thereafter telephoned her that he would take his life if she
resisted the divorce or appeared in the courtroom at the hear-
ing, all of which she believed, and for that reason she did not
appear. She further alleges, that all of the facts set forth in
his complaint were false and untrue; that his threats of sui-
cide were made with fraudulent intent to cover his real pur-
pose, which was to marry another, a purpose he had there-
after admitted to her; that she has a good defense to his com-
plaint, and that he has neglected her and their children, so
that they are in necessitous circumstances. It would seem
that this recital were enough to warrant the court in vacat-
ing the decree, and we take it that it would have done so but
for its conception of the case of *Metler v. Metler*, 32 Wash.
494, 73 Pac. 535, wherein this court said:

"The reasons for making this distinction between judg-
ments in this particular action and judgments in ordinary
actions are apparent. A decree of divorce affects the status
of the parties, both with respect to their relations to one
another and their relations to the public. By the terms of
the statute, divorced persons may lawfully marry, after a
limited time from the rendition of the decree, and to permit
its vacation is to make it possible, under the guise of law, to
inflict injury and suffering upon persons whose innocence en-
titles them to every protection the law can afford. It is
therefore highly important, not only for the sake of the
parties thereto, but also for the sake of such persons, that
decrees of divorce should not be granted except for specific
causes provided by law, proved and found by the court, in

actions where the court has undoubted jurisdiction over the subject-matter and the parties; but it is also equally important that the decree, when once granted, be not disturbed by the court granting it."

The power of a court having jurisdiction of the parties to vacate a decree of divorce, once formally entered, is therefore squarely before us. In the *Metler* case the court also said:

"The court can, of course, lawfully vacate such decree when entered without jurisdiction, and perhaps where it is the result of fraud practiced on the court or the other spouse."

The *Metler* case was referred to in *McDonald v. McDonald,* 34 Wash. 293, 75 Pac. 865, wherein it was said:

"It would seem to be violative of fundamental principles to hold that a divorce decree, fraudulently procured, may not be timely assailed by the innocent party to the proceedings."

It would seem therefore that, notwithstanding the doctrine frequently announced that a decree of divorce will never be vacated because of the probable evil consequences following the severance of a new relation, bearing as it might after-begotten children, the better rule is that, notwithstanding the decree, a court will reopen and try the case if the decree is the result of a fraud practiced upon the other party or upon the court.

This rule is admitted in the case of *Lewis v. Lewis,* 15 Kan. 181, cited and relied upon by respondent, although the court refused to reopen the decree, finding no irregularity in the proceeding. This case, however, was distinguished in the later case of *Hemphill v. Hemphill,* 38 Kan. 220, 16 Pac. 457, wherein the rule here announced was declared. In the case of *Whitcomb v. Whitcomb,* 46 Iowa 437, cited by respondent, the distinction between the force of a decree entered upon constructive service, the statute having been strictly complied with, and a fraud upon the party or the court, is clearly pointed out. It was held that the decree

would not be vacated where summons was regularly had by
publication, but that the court had power in all cases to va-
cate a decree obtained by fraud, even though the plaintiff
may have subsequently married and become a parent.  The
case of *Ewing v. Ewing*, 24 Ind. 468, also relied upon by
respondent, followed the case of *McQuigg v. McQuigg*, 13
Ind. 294.  In the case of *Earle v. Earle*, 91 Ind. 27, after a
careful review of all the authorities, the court held that a de-
cree of divorce obtained by fraud may be vacated and set
aside as any other decree thus obtained.  Continuing, the
court said:

"We think, therefore, that when such a wrong has been
consummated in the obtaining of decrees of divorce, the courts
have the right and owe the duty to set them aside and declare
them null and void, and that so far as the case of *McQuigg v.
McQuigg*, *supra*, and the cases following it conflict with the
conclusion reached, they should be overruled.  Very much
good, we think, will come from the adoption of the rule in di-
vorce cases, and no harm, provided the injured party is not
negligent in moving upon the discovery of the fraud.  Possi-
bly, in some cases, a second husband or wife may innocently
be made to suffer, but, with proper restriction, this is not more
likely than in the reversal of decrees on appeal to this court.

"It is proper and right in the administration of the law
to protect innocent third parties, who may marry a divorced
man or woman, but it is quite as proper and important to pro-
tect the husband and wife and innocent children from fraud-
ulent divorces.  Some of the cases in this state, in which relief
has been denied, are forcible illustrations of the necessity of
the rule here adopted.  The adoption of the rule is essen-
tial to the complete administration of justice, will tend to
protect the courts and the family from fraud and wrong, and
will serve as a warning to those inclined to practice such
fraud."

The doctrine of this case has been followed in the later
case of *Nicholson v. Nicholson*, 113 Ind. 131, 15 N. E. 223.
The case of  *O'Connell v. O'Connell*, 10 Neb. 390, 6 N. W.
467, is also relied on.  That the force of this case as an auth-
ority had been weakened by the subsequent decisions of that

court, was insinuated but not discussed by the court in *Smithson v. Smithson*, 37 Neb. 535, 56 N. W. 300, 40 Am. St. 504. It is unnecessary to review other cases cited by respondent and which only incidentally bear upon our discussion.

The reason for the better rule is aptly stated in *Brown v. Brown*, 58 N. Y. 609, wherein the chapter of the code, allowing vacation of decrees and judgments and the power of the court thereunder was clearly defined.

"Under that provision [in relation to opening judgments] the period of seven years must elapse before a judgment founded on publication can be reposed upon as final. It is obvious that such a provision is inappropriate to actions for divorce; they were therefore excepted from it. But the power which the courts had before the Code, over their own judgments and records, is not interfered with. It is not contended that section 135, or any other, takes away the power of the court to open a judgment of divorce entered upon default, where the summons has been personally served, and it would indeed be an anomaly to give so much greater effect to one entered upon publication that while the former could be opened by the exercise of the discretionary power of the court, the latter would be beyond the reach of any such power. We do not think that it was the intention of the act to produce any such unreasonable result."

The rule that such a decree may be vacated is sustained by the following authorities: *Edson v. Edson*, 108 Mass. 590, 11 Am. Rep. 393; *Adams v. Adams*, 51 N. H. 388, 12 Am. Dec. 134; *Body's Appeal*, 38 Pa. St. 241; *Zoellner v. Zoellner*, 46 Mich. 511, 9 N. W. 831; *Helmes v. Helmes*, 24 Misc. Rep. 125, 52 N. Y. Supp. 734; *Hamilton v. Hamilton*, 29 App. Div. 331, 51 N. Y. Supp. 365; *Elmgren v. Elmgren*, 25 R. I. 177; *Medina v. Medina*, 22 Colo. 146, 43 Pac. 1001; *Van Derveer v. Van Derveer*, 30 W. Law B. 96, 11 Ohio Dec. (reprint) 823; *Womack v. Womack*, 73 Ark. 281, 83 S. W. 937, 1136; Bishop, Marriage & Divorce, 1556; Stewart, Marriage & Divorce, 422; and, in the opinion of the writer, by the case of *Winstone v. Winstone*, 40 Wash. 272, 82 Pac. 268, as well as the *Metler* and *McDonald* cases.

It is contended, however, that, the lower court having had complete jurisdiction, a mere offer, to prove that the decree was obtained as the result of perjured testimony and was fraudulently obtained is insufficient. Whatever the rule may be when the divorce proceeding is collaterally inquired into, it must be remembered that this is a direct application, timely, and diligently prosecuted, and no harm can result to any innocent person by a further inquiry as to the justice of respondent's cause.

Aside from these considerations, the interest of the public in all actions for divorce is such that a policy has grown up in accord with enlightened sentiment to discourage and deny divorces unless claimed upon proper grounds and sustained by an honest disclosure of the facts. There is much in the record that prompts further inquiry. The complaint did not, as the statute (Bal. Code, § 5730; P. C. § 4641), expressly provides, distinctly state the causes relied upon. Although the proceeding must have borne the earmarks of a divorce by consent or collusion, the prosecuting attorney was not called upon to inquire into the merits of the cause. It was in effect, notwithstanding the record, a decree by default. The fact that respondent, as it now appears, had prompted the whole proceeding, including the employment of an attorney who was willing to accept the questionable agency of appearing for the defendant, through the intervention of the plaintiff whose interest was hostile, was in itself, when promptly disavowed, a showing of fraud upon the law and upon the court calling for further inquiry. The demurrer admits the conduct of respondent prior to and subsequent to the entry of the decree; and while ordinarily the plea of coercion or duress would not be heard upon the facts alleged, when we consider the years of intimate relationship existing between these parties, the trust and confidence inspired by mutual interest in the rearing of children, it is not for us to say in this proceeding that appellant was not the victim of a well-founded dread that respondent, the father of her children,

would take his life unless she submitted to his demand. His after-declaration that he intended to marry another was enough to disabuse her mind, make the cowardice of his silly threat stand naked and revealed, and recall the fact that her right had been taken from her without a hearing. It is not, as counsel says, an indication that she has allowed her "jealous and spiteful disposition to overcome her better judgment." In it we see the way of woman, and when it appears that she has been deprived of her right by a pretense that prevented a full inquiry, the interest of the public as well as that of the wife intervenes and demands a rehearing upon the full merits of the cause.

"Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of compromise; . . . these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and fair hearing." *United States v. Throckmorton*, 98 U. S. 61, 25 L. Ed. 93.

The order of the lower court sustaining the demurrer to appellant's petition and dismissing her from the court is reversed, and the cause remanded with instructions to the lower court to entertain her petition for the vacation of the decree.

RUDKIN, C. J., FULLERTON, GOSE, and MORRIS, JJ., concur.