[No. 11456. Department One. February 4, 1914.]

ALICE V. ROBINSON, *Appellant*, v. EDWARD ROBINSON, *Respondent*.[1]

DIVORCE—VACATION OF DECREE—COLLUSIVE SUIT—PETITION FOR VACATION—SUFFICIENCY. A decree of divorce will not be vacated at the suit of the successful plaintiff, for fraud in obtaining it, and her petition is demurrable for want of sufficient facts, where the gist of the petition was that her husband represented to her that the marriage embarrassed him financially and that he would get his business affairs adjusted and remarry her within six months, and otherwise he would be compelled to leave the state and he would give her no financial assistance, it being alleged that she was finally persuaded to bring the action, consenting to go before the court and tell the exact situation, which it appears she did not do, the inference from the allegations being that she testified falsely or suppressed material facts in the trial of the divorce case, resulting in findings sustaining the decree of divorce; since the petition shows nothing more than a collusive arrangement to obtain a divorce.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered July 10, 1913, dismissing an application to vacate a decree of divorce, upon sustaining a demurrer to the petition. Affirmed.

*F. W. Girand* and *Robertson & Miller*, for appellant.

*Post, Avery & Higgins*, for respondent.

GOSE, J.—This is a petition to vacate a decree of divorce, entered at the suit of the petitioner. The decree was entered on the 16th day of April, 1912. Nearly ten months later, and on February 4, 1913, the petitioner, the plaintiff in the divorce suit, filed her petition to vacate the decree. A

[1]Reported in 138 Pac. 288.

general demurrer to the petition was sustained. The petitioner has appealed.

The petition is too lengthy to be reproduced in full. It alleges, in substance, that the appellant was married to the respondent in October, 1900; that they lived together as husband and wife until the date of the entry of the decree, except during brief intervals when the respondent was away from his home, "through the inducement and solicitation of one Ethel Irving, with whom he became infatuated in the spring of 1910; that, in the month of May, 1911, the respondent, because of his infatuation for Ethel Irving, and at her instigation, brought an action against the appellant for a divorce on the ground of desertion, which he thereafter dismissed because there was no ground for his complaint; that, a short time thereafter, the respondent, who is a lawyer, commenced to urge and persuade the appellant to apply for and obtain a divorce from him on the ground of desertion, "in order that he might marry the said Ethel Irving;" that he told her that her refusal to comply with his request and secure a divorce "was occasioning him great inconvenience and annoyance in a business way, and he would be ruined financially as well as lose his standing with his friends, employers and business associates;" that he repeatedly told her that the application would be only a formal matter; that, as soon as the six months' limitation expired after she had secured the decree, "he would remarry her," and in the meantime would straighten up his business affairs; that they could then resume the marital relations; that she frequently inquired of him in what manner his marriage embarrassed him; that he always answered that he could not tell her, "and asked her if she could not believe him and trust him;" that the respondent often told her that, if she did not commence an action for and secure a divorce from him, he would be compelled to leave the state; that she would never hear from him again; that he would give no financial aid to her and to the children, but that, if she would get a divorce, his financial

difficulties would soon be satisfactorily adjusted; that he told her that he would employ an attorney to represent her; that he would make default; and that he would make provision for the support of herself and their children until their remarriage. It is further alleged that, after the respondent had pleaded with the appellant for a number of months, "and after talking with one of his lawyers," who assured her that the respondent was greatly embarrassed in a financial way by reason of her refusal to apply for a divorce, and being overpersuaded, she finally consented to go before the court, "and tell the situation to the court just as it was, at the same time protesting that she did not want a divorce, that she had no grounds therefor; that she did not believe that a decree should be granted;" that she was advised by the respondent that, in order to get a divorce, "it would be necessary for her to go to the attorney whom he had selected and would pay, and have him present the matter for her;" that, pursuant to the "arrangement," she instituted an action for divorce; that the respondent defaulted, and that, on the 16th day of April, 1912, a decree of divorce was entered.

She further alleges, that the facts stated in her complaint and testified to at the trial did not justify a divorce on the ground of desertion; that, although she and the respondent sustained the marital relation subsequent to the bringing of the action, she did not testify to that fact; that the findings of the court in the divorce action, which are made a part of the petition, are not in accordance with the evidence adduced at the trial, and are not supported by the evidence; that, at the trial, she did not state that she wanted a divorce, but only stated "that she wanted to do what was best for the children;" that the trial court did not believe there was any ground for divorce, and continued the hearing until the afternoon; that the court was then not satisfied of the sufficiency of the evidence to warrant a decree; that he called counsel for the appellant and the prosecuting attorney to the bench, and the attorney for the appellant stated to

the court that he and the attorney for the respondent had been endeavoring for a number of months to bring about a reconciliation, but that they were unable to do so, and expressed the opinion that the appellant and the respondent could no longer live together as husband and wife; that, after this statement, the court granted the decree; that the statement made by counsel for the appellant "was not the fact;" that the appellant did not desire a divorce, but that she applied for it because of the solicitation of the respondent and because of the representations made by him and one of his attorneys; that she did not know, or have reason to believe, at such time "that a fraud was being practiced upon her or the court;" that she is informed and believes that the decree "was obtained by collusion;" that the respondent had a good defense to the action; that he had not in fact deserted her, but had, during the pendency of the suit, sustained the marriage relation with her, and was supporting her and the children.

In the divorce suit, the court expressly found that the respondent deserted the petitioner in the month of July, 1909, that he had since that time refused to live with her, and that during all of said time he had lived separate and apart from her, against her will, and without her consent. The divorce decree recites that the prosecuting attorney of Spokane county appeared on behalf of the state and resisted the action. The decree awarded to the appellant the custody of the four minor children, and directed the respondent to pay her the sum of $200 per month, payable monthly, for the support and maintenance of herself and the minor children, until the further order of the court.

We think the demurrer was properly sustained. There is no allegation that the appellant was feeble in mind or body, or that she stated the real facts to her attorneys or to the court. In short, the petition shows nothing but a collusive arrangement for a divorce. She alleges that she finally consented to go before the court, "and tell the situation to the

court just as it was." There is no allegation that she did this. Indeed the inference is either that the facts alleged in her petition are false, or that she testified falsely, or suppressed material facts in the trial of the divorce suit. The gist of her petition is that her husband, who had theretofore commenced a divorce suit against her on the ground of desertion, which he had dismissed, represented to her that the marriage embarrassed him in his business relations; that, while both of the parties knew there was no ground for divorce, he represented that, if she would obtain a divorce, he would get his business affairs adjusted within six months and remarry her.

The appellant relies upon *Graham v. Graham*, 54 Wash. 70, 102 Pac. 891; *Pringle v. Pringle*, 55 Wash. 93, 104 Pac. 135, and *McDonald v. McDonald*, 34 Wash. 293, 75 Pac. 865, from this jurisdiction, and *Danforth v. Danforth*, 105 Ill. 603, and *Winder v. Winder*, 86 Neb. 495, 125 N. W. 1095, from other jurisdictions. The case at bar has little in common with any of these cases. In the *Graham* case, a decree of divorce was entered at the suit of the husband on the first day of September, 1908. On the first day of October following the wife filed her petition, praying for an order vacating the decree and for permission to withdraw her answer and defend the suit. She alleged in her petition that, prior to November, 1907, the marriage relation had been most amicable; that from that time the husband began to grow cold and distant; that in June, 1908, he requested her to procure a divorce, which she refused to do; that his inattention and neglect then became more marked, until finally, with intent to deceive her as to his real motive, he more than once threatened to commit suicide unless she consented to allow him to procure a divorce; that he procured a revolver and made a pretended attempt to take his life; that his conduct so terrorized her and her children that she was reduced in health and so shocked in her nervous system that she was induced to believe that he would commit suicide, and yielded

to his demands; that she signed an answer which her husband had caused to be prepared; that her husband thereafter telephoned her that he would take his life if she resisted the divorce or appeared in the court room at the hearing; all of which she believed, and for that reason did not appear. She further alleged, that all the facts set forth in the complaint were false and untrue; that his threats of suicide were made with intent to cover his real purpose, which was to marry another, a purpose which he thereafter admitted to her. In holding that the petition was sufficient, the court said, that the complaint in the divorce suit was subject to demurrer; that the suit was in effect, notwithstanding the record, a decree by default; that, while ordinarily,

"the plea of coercion or duress would not be heard upon the facts alleged, when we consider the years of intimate relationship existing between these parties, the trust and confidence inspired by mutual interest in the rearing of children, it is not for us to say in this proceeding that the appellant was not the victim of a well founded dread that respondent, the father of her children, would take his life unless she submitted to his demand."

In the *Pringle* case, the wife commenced an action in Mason county against the petitioner and obtained a decree of divorce upon constructive service. Returns were properly made that the husband could not be found in either Mason or Chehalis county. A trial was had, and a decree entered in which it was adjudged that the wife was entitled to a divorce. The husband alleged in his petition, that he had, at all times during the pendency of the action, resided in Chehalis county; that his place of residence and post office address were well known to his wife. This was held to state a ground for relief. It will be observed, however, that the petition was filed by the innocent party.

In the *McDonald* case, the court said, "It would seem to be violative of fundamental principles to hold that a divorce decree fraudulently procured may not be timely asserted by the *innocent* party to the proceedings." The italics are

ours. In the *Danforth* case, a motion was made to vacate a decree of divorce on the ground that it had been collusively entered. It was made at the term during which the decree was rendered. The court said, that the decree had not then become "an unalterable record;" that the decree "with the records of other proceedings of the term was still *in fieri,* and under the control of the court to amend, change or vacate as justice might require." *Winder v. Winder* is to the same effect. There the motion to vacate the decree because of collusion was made at the term at which the decree was entered. It was said, "the court had power to set aside the decree during the term, if satisfied that it had been obtained by fraud or collusion; or if it believed that its former conclusion was erroneous."

In *Meisenheimer v. Meisenheimer,* 55 Wash. 32, 104 Pac. 159, 133 Am. St. 1005, and *Ferry v. Ferry,* 9 Wash. 239, 37 Pac. 431, we held that a decree of divorce stands upon the same footing as a decree in other cases. In the *Ferry* case, the wife was the defendant in the divorce action. The decree was granted to her upon her cross-complaint. She sought to have the decree vacated upon the ground, among others, that neither party to the divorce suit was a resident of the state at the time the decree was entered. She also alleged that no evidence was taken as to the residence of either party. A demurrer to her complaint was sustained. In passing upon the case, the court said, "We know of no rule prevailing in cases where the husband or wife alleges fraud of this kind different from that which controls cases between other classes of parties."

In *Karren v. Karren,* 25 Utah 87, 69 Pac. 465, 95 Am. St. 815, 60 L. R. A. 294, the wife sought to vacate a decree of divorce obtained at the suit of the husband. She alleged, *inter alia,* that her husband represented to her that he was procuring the divorce because of the insistence of his parents, and in order to get the homestead conveyed to him by his father, and that he represented that, after the divorce was

obtained, he would remarry her, and that, to enable him to procure the deed to the homestead, she refrained from appearing and defending the action. In denying the relief, the court said, "The plaintiff, when she gave her consent, must have known that the contemplated divorce could only be procured by a suppression of the facts and false testimony."

*Nichols v. Nichols*, 25 N. J. Eq. 60; *Newman v. Newman*, 27 Okl. 381, 112 Pac. 1007, and *Simons v. Simons*, 47 Mich. 253, 645, 10 N. W. 360, announce the same rule. In *Starbuck v. Starbuck*, 173 N. Y. 503, 66 N. E. 193, 93 Am. St. 631, the court said:

"A party cannot avail himself of a defense or of a right to recover by means of an invalid decree or judgment obtained by him; but, on the other hand, he may not be heard to impeach a decree or judgment which he himself has procured to be entered in his own favor."

This is undoubtedly the general rule; there may be exceptions. If the petition, when read as an entirety, showed that the appellant was in fact acting under duress, she might be exempt from the rule stated, but no such fact appears.

The fact that perjured testimony may have been offered to secure the decree affords no ground for vacating it. *Whittley v. Whittley*, 60 Misc. Rep. 201, 111 N. Y. Supp. 1078; *United States v. Throckmorton*, 98 U. S. 61. In the *Throckmorton* case, it was said:

"On the other hand, the doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed."

We think the petition, when fairly read, shows nothing more than a collusive arrangement to obtain the divorce. The prosecuting attorney appeared and resisted on behalf of the state. The petition does not allege that he failed to dis-

charge his duty to the state. The legal presumption is that he did. There is no allegation that the appellant in the divorce action told the "situation to the court just as it was," as she alleges she had agreed with the respondent to do. Nor is there any allegation either that she did or that she did not make full disclosures to her counsel who represented her at the instance of the respondent. It is true she alleges that the evidence was not sufficient to justify the decree. That, however, was for the court. In what respect it was insufficient, she fails to point out. The presumption is that her counsel did their duty and there is no allegation to the contrary. The presumption is that the court did its duty and there is no allegation to the contrary, except the alleged insufficiency of the evidence. The insufficiency of the evidence would, in proper cases, justify an appeal, but it will not justify a vacation of the decree. *Morgan v. Williams, ante* p. 343, 137 Pac. 476.

We think the petition is fatally defective. The judgment is affirmed.

CROW, C. J., ELLIS, MAIN, and CHADWICK, JJ., concur.