[No. 13433. Department One. April 16, 1917.]

GEORGE H. GODFREY et al., Appellants, v. NELLIE CAMP et al., Respondents.[1]

APPEAL—DECISION—JUDGMENT—ATTACK—AFTER REMAND. After a judgment has been affirmed on appeal, the superior court has no jurisdiction of an action to modify it or set it aside, without the permission of the supreme court.

JUDGMENT—VACATION—EQUITABLE RELIEF—FRAUD—PERJURED TESTIMONY—COMPLAINT—SUFFICIENCY. Where the probate of a will was attacked upon the ground that the will was forged and supported by perjured testimony, and the court, after a trial on the merits, found that the will was valid and judgment to that effect was entered and affirmed on appeal, a complaint in equity to set aside the judgment on the ground that, since the entry of final judgment, new evidence has been discovered by due diligence to the effect that the will was a forgery and that the judgment was obtained by perjured testimony, is insufficient to state a cause of action, where it fails to allege extrinsic or collateral fraud entering into and constituting fraud in the transaction, such as false promises or deception defeating a fair trial; and it is not sufficient to allege that a third person executed the will after the death of the testator and induced the witnesses to conceal such fact.

CHADWICK, J., dissents.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered January 22, 1916, upon sustaining a demurrer to the complaint, dismissing an action to vacate a judgment, after a hearing before the court. Affirmed.

Scott & Campbell, for appellants.

Ira Honefenger and Hamblen & Gilbert, for respondents.

[1]Reported in 164 Pac. 210.

MOUNT, J.—This action was brought to set aside a judgment in the matter of the estate of Sarah J. Brown, deceased. The trial court sustained a demurrer to the complaint and dismissed the action. The plaintiffs have appealed from that order.

It appears upon the face of the complaint that these plaintiffs instituted an action to set aside the purported will of Sarah J. Brown, deceased. That action was tried in the superior court on June 19, 1912, and a judgment was entered declaring the will valid. That judgment was afterwards affirmed upon appeal to this court. *In re Brown's Estate*, 83 Wash. 528, 145 Pac. 591. After the judgment was affirmed, the plaintiffs petitioned this court for a rehearing. That petition was denied in April, 1915. Thereafter, in June, 1915, these plaintiffs filed a petition in this court asking permission to attack the judgment upon the facts set out in this complaint. The petition was denied. Afterwards a petition for a rehearing thereon was also denied. Thereafter this action was brought in the court below alleging the foregoing facts, and also that the purported will which had been adjudicated to be valid was invalid because it was a forgery; and that, since the original trial, additional evidence had been discovered which would show the will to be a forgery; that it was afterwards discovered that the witnesses who testified in favor of the will had perjured themselves upon the trial; that these facts were unknown to the plaintiffs at the time of the original trial, and could not have been discovered with reasonable diligence. This, in short, is the substance of the complaint.

Upon the hearing of the demurrer, the trial court was of the opinion that there was no jurisdiction in the superior court to reopen the case and retry it; and also that the complaint did not state facts sufficient to constitute a cause of action. We think the trial court was right upon both grounds.

This court in a number of cases has held that after a

judgment has been affirmed upon appeal, the superior court
has no jurisdiction of an action to vacate it for fraud, where
permission to do so has not been granted by this court.
*Kath v. Brown,* 53 Wash. 480, 102 Pac. 424, 132 Am. St.
1084; *Kath v. Brown,* 69 Wash. 306, 124 Pac. 900; *Cochrane v. Van de Vanter,* 13 Wash. 323, 43 Pac. 42; *Pacific
Drug Co. v. Hamilton,* 76 Wash. 524, 136 Pac. 1144; *State
ex rel. Prentice v. Superior Court,* 86 Wash. 90, 149 Pac.
321.

In *Kath v. Brown,* 53 Wash. 480, *supra,* we said, in a
case very much like this:

"The trial judge had no jurisdiction to entertain the petition now before us. When the judgment of this court affirming the judgment of the judge *pro tempore* was remitted to the lower court, it became in legal effect conclusive upon all the parties to the action in that court, unless
recalled or attacked by permission first obtained upon proper
showing here. This was not done."

In *Pacific Drug Co. v. Hamilton, supra,* we held that the
lower court was without jurisdiction to amend a judgment
which had been affirmed by this court.

In *State ex rel. Prentice v. Superior Court, supra,* after
referring to a number of cases from this court, we said:

"An examination of these cases discloses the fact that, in
every one of them, there was either an express affirmance of
the judgment by this court, or an express entry of judgment
on the merits by this court. They sustain the doctrine that,
in such cases, no interference with such judgments by any
proceeding in the same cause in the lower court will be tolerated, except by direction or leave of this court."

It is plain, therefore, that the lower court had no jurisdiction to vacate, modify, or set aside the decree ordered
entered by this court, except by permission of this court,
which was not had.

This is decisive of the case, but in view of the fact that
no opinion was written when the application for permission
to reopen the case was denied, we deem it proper to consider

briefly the sufficiency of the complaint. It appears there-from that the will of Sarah J. Brown, deceased, was attacked by these plaintiffs upon the ground that the will was forged and supported by perjured testimony. After a trial of that question, the superior court found that the will was valid, and entered a judgment to that effect. The appellants now claim that, since that trial, they have discovered other evidence to the effect that the will was a forgery; that the witnesses who testified in that case testified falsely, and that these facts were discovered with due diligence after the trial.

In the case of *Robertson v. Freebury*, 87 Wash. 558, 152 Pac. 5, L. R. A. 1916B 883, this court had occasion to consider the questions presented here, and we said:

"Assuming that the court's judgment was based upon perjured testimony, that fact was unavailing, for the reason that judgments or decrees of a court of justice cannot be set aside on a collateral attack as being fraudulently obtained upon the sole ground that they were obtained on perjured evidence, without some other extrinsic or collateral fact entering into and constituting fraud in the transaction."

And further on in the same opinion, defining what were *"extrinsic or collateral facts,"* we quoted from *Pico v. Cohn*, 91 Cal. 129, 25 Pac. 970, 27 Pac. 537, 25 Am. St. 159, 13 L. R. A. 336, as follows:

"What, then, is an extrinsic or collateral fraud, within the meaning of this rule? Among the instances given in the books are such as these: Keeping the unsuccessful party away from the court by a false promise of a compromise, or purposely keeping him in ignorance of the suit; or where an attorney fraudulently pretends to represent a party, and connives at his defeat or, being regularly employed, corruptly sells out his client's interest. *United States v. Throckmorton*, 98 U. S. 65, 66, and authorities cited. In all such instances the unsuccessful party is really prevented, by the fraudulent contrivance of his adversary, from having a trial; but when he has a trial, he must be prepared to meet and expose perjury then and there. He knows that a false claim or defense can be supported in no other way; that the very ob-

ject of the trial is, if possible, to ascertain the truth from the conflict of the evidence, and that, necessarily, the truth or falsity of the testimony must be determined in deciding the issue. The trial is his opportunity for making the truth appear. If, unfortunately, he fails, being overborne by perjured testimony, and if he likewise fails to show the injustice that has been done him, on motion for a new trial, and the judgment is affirmed on appeal, he is without remedy."

No such extrinsic or collateral facts were alleged. The foundation for this rule, of course, is that there must be an end of litigation. And when a case is once tried in a court of competent jurisdiction it is finally tried and the findings therein are conclusive, unless reversed on review or upon appeal. That rule is clearly applicable in this case. The case was tried originally upon the question of fraud procured by forgery. If the will was forged, the testimony in support of it must necessarily have been perjured. When these plaintiffs sought to set aside that will, they entered the contest assuming that they were prepared to show those facts. They made that issue in the case, tried it out, and were not successful. If they may now, after the case has been *affirmed upon appeal*, again raise the same issue and retry it, and again fail, then, upon further discovered testimony, they may have another trial, and so on indefinitely. Our system of jurisprudence does not permit any such procedure. The only tenable theory is that a trial once had is conclusive upon the parties, when no errors are found and when no fraudulent contrivance prevents a fair trial. New trials, of course, may be granted as provided by the code, and not otherwise.

We are therefore satisfied that the trial court properly sustained the demurrer upon both grounds.

The judgment is affirmed.

MAIN and MORRIS, JJ., concur.

CHADWICK, J. (dissenting)—After the opinion had been filed and became final in *In re Brown's Estate*, 83 Wash.

528, 145 Pac. 591, the contestants petitioned this court for leave to reopen the case in the court below and to submit certain positive testimony tending to show not only that the will was a forgery, but actually fastening the crime of forgery upon Nellie Waterhouse, now Nellie Camp, and George McFarlane. The court denied the petition without opinion, although the petitioners had brought themselves strictly within the rule of *Kath v. Brown*, 53 Wash. 480, 102 Pac. 424, 132 Am. St. 1084; *Kath v. Brown*, 69 Wash. 306, 124 Pac. 900; and *Post v. Spokane*, 28 Wash. 701, 69 Pac. 371, 1104. The majority cites as sustaining authority *Cochrane v. Van de Vanter*, 13 Wash. 323, 43 Pac. 42; *Pacific Drug Co. v. Hamilton*, 76 Wash. 524, 136 Pac. 1144; and *State ex rel. Prentice v. Superior Court*, 86 Wash. 90, 149 Pac. 321, but these cases have no bearing, as I shall show.

Counsel asked a rehearing. This was refused—again without an opinion. Whereupon, no other course being open, they began this suit in equity, setting up the fraud and facts subsequently ascertained, and praying for a decree of the court declaring the fraud and forgery. The material allegations of the complaint follow:

"That since the decision of the supreme court sustaining the validity of the said will and affirming the said judgment herein mentioned, and since the filing of the remittitur from the supreme court in the clerk's office of the superior court of Spokane county, state of Washington, the 21st day of April, 1915, this plaintiff has discovered and learned the following facts with reference to the preparation and execution of the said will and the manner of such preparation and execution, and alleges the facts to be with reference thereto, that the said will is fraudulent, forged and fabricated and was not in existence at the date of the death of Sarah J. Brown, to wit: January 16th, 1911, and that the same did not come into existence until on or about the 14th day of December, 1911; that during the first part of the month of December, 1911, the defendant Nellie Camp, herself, prepared a draft of said will upon a typewriter; that she, herself, signed the signature of 'Sarah J. Brown' to such typewritten draft

which is now the instrument referred to as the will of Sarah J.
Brown, deceased; that upon the 8th day of December, 1911,
she first approached two people, namely: Linn J. Earhart
and Mrs. Annie Lane, residents of Spokane, Washington, and
requested them and each to become subscribing witnesses to
the said will; that upon said date they and each refused to
become witnesses, but at the urgent request of Nellie Camp,
they met her by appointment in the parlors of the Pacific
Hotel in Spokane, Washington, at about two o'clock p. m.
on the 9th day of December, 1911; that there was present at
such time the two parties mentioned, together with Nellie
Camp and George McFarlane, and that at that time and
place and in the presence of said George McFarlane, Linn J.
Earhart and Mrs. Annie Lane, the said Nellie Camp pro-
duced the instrument which has since been admitted to pro-
bate as the last will and testament of Sarah J. Brown, de-
ceased, upon which appeared at that time the signature of
'Sarah J. Brown,' but which did not contain the signature
of the subscribing witnesses, to-wit: George A. Griffith and
M. C. Lavender; that the said Linn J. Earhart and Mrs.
Annie Lane examined the said instrument so submitted to
them by the said Nellie Camp at that time and became fa-
miliar with said will, and are now familiar with the contents
of said instrument; that she at that time requested the said
Linn J. Earhart and Mrs. Annie Lane to become subscribing
witnesses thereto, and upon the refusal of the said Mrs. Annie
Lane to do so, she turned to Earhart and offered him five
hundred dollars ($500) if he would sign his name as a wit-
ness to the signature 'Sarah J. Brown' as it appeared there-
on, stating to them at that time that she knew where she
could secure one person who would witness it, but did not
know where she could get another; that at said date and time,
the date line of said will contained the date the 14th day of
January, 1910, and that the said Nellie Camp stated to them
that she, herself, had written said date in said will; that it
was as good a date as any; that said Earhart refused to
sign the said will as requested, and thereupon he and the
said Mrs. Annie Lane, together with Nellie Camp, proceeded
to leave the said hotel, and after reaching the street said
Nellie Camp informed them that she would call at their
home at about five o'clock that evening; they, however, did
not reach home at five o'clock that evening, but were pro-

ceeding on their way and while so doing met Nellie Camp,
who stated that she had called at their home but did not
find them there and had left a note there with a name and
telephone number for them to call, which note contained the
following notation: 'J. F. Dealy, 417 Hyde Blk. A. 1244,
Chas. Griffith,' and she again insisted that they and each
sign the said will as subscribing witnesses, which the said
Earhart and Lane positively refused to do; she thereupon
requested them to say nothing about what had occurred be-
tween them; that they and each told her at that time that they
would not say anything about what had occurred unless com-
pelled so to do; that by reason thereof and of the unpleasant
notoriety to which they knew they would be subjected if
they did tell what had occurred, as aforesaid, they re-
frained from divulging the facts herein set forth, and re-
fused to divulge the same until on or about the date as above
set forth; that the said note so written by the said Nellie
Camp and left at the place of residence of the said Linn J.
Earhart and Mrs. Annie Lane, is attached to the original
affidavit of Mrs. Annie Lane, which has been filed in the su-
preme court, in the said contest proceedings, in which the
said judgment rendered as a part of the petition of the
plaintiffs herein, asking permission to attack the said judg-
ment in the lower court, and that the said note is hereby re-
ferred to and made a part hereof, the same as if fully set
forth herein."

The error of this court in summarily dismissing the plea
of the contestants to reopen the case is impliedly admitted.
It is said in the opinion, after citing the cases to which I
have referred:

"This is decisive of the case, but, in view of the fact that
no opinion was written when the application for permission to
reopen the case was denied, we deem it proper to consider
briefly the sufficiency of the complaint. It appears there-
from that the will of Sarah J. Brown, deceased, was attacked
by these plaintiffs upon the ground that the will was forged
and supported by perjured testimony. After a trial of that
question the superior court found that the will was valid, and
entered a judgment to that effect. The appellants now
claim that since that trial they have discovered other evi-
dence to the effect that the will was a forgery; that the wit-

nesses who testified in that case testified falsely, and that these facts were discovered with due diligence after the trial."

The court then proceeds, by what seems to me to be an inconclusive argument, to sustain itself. The opinion does not touch the principal question, but justifies the *former* delinquency of the court by urging and attempting to prove by authority that the *present* proceeding is a collateral attack upon the former judgment. That the opinion is unsound and that the position of the court is indefensible, seems to me to be easily demonstrated. Let us see whether "this is decisive of the case." "This" is the conclusion drawn from the cases cited, that is:

"It is plain, therefore, that the lower court had no jurisdiction to vacate, modify, or set aside the decree ordered entered by this court, except by permission of this court, which was not had."

The legal effect of the court's holding—if, indeed, it is not so held by the positive words: "After a trial of that question [forgery], the superior court found that the will was valid, and entered a judgment to that effect"—is to make all judgments entered by a superior court and affirmed by this court final, and to assert the doctrine that this court will not, although its former opinion is shown to be wrong, or so questionable as to warrant further inquiry upon the merit of the case, grant permission to reopen the case. If this is the test, then the rule that a litigant may so petition is entirely overcome, for we may safely assume that such petition can rarely, if ever, be filed until after a judgment has been entered.

*Kath v. Brown,* 53 Wash. 480, 102 Pac. 424, 132 Am. St. 1084, was an appeal from an order overruling a motion to vacate made in the court below. We held that jurisdiction to hear such motion was not in the lower court but in this court, and the appellant, not having made his motion here, there was no controversy of which we could take cognizance. *Kath v. Brown,* 69 Wash. 306, 124 Pac. 900, admits as well as as-

serts the right to petition this court notwithstanding a final judgment. The case went off upon the principal ground:

"It also appears that he has neglected for three years to avail himself of the remedy pointed out in *Kath v. Brown, supra,* and that in the meantime a restraining order has been issued against him, which order has become final and binding. In short if we should grant the application now made, we would in effect set aside the restraining order without a hearing thereon. We are of the opinion, therefore, that, even if the plaintiff's showing, if made in time, would have been sufficient, he is now barred by laches and by the restraining order above mentioned which has become final. The application is therefore denied."      .

*Cochrane v. Van de Vanter, supra,* held only that an independent action in equity would not lie to restrain an execution upon a judgment after an appeal had been dismissed. It has no bearing upon the question before us. The *Hamilton* case held simply that a court could not, by *ex parte* order, amend a judgment entered upon a remittitur sent down by this court. In the *Prentice* case, the court held:

"An examination of these cases discloses the fact that, in every one of them, there was either an express affirmance of the judgment by this court, or an express entry of judgment on the merits by this court. They sustain the doctrine that, in such cases, no interference with such judgments by any proceeding in the same cause in the lower court will be tolerated, except by direction or leave of this court."

The only cases in our reports bearing upon the question at bar is *Kath v. Brown,* 53 Wash. 480, 102 Pac. 424, 132 Am. St. 1084, and *Post v. Spokane,* 28 Wash. 701, 69 Pac. 371, 1104. Each of these cases holds to the right of a defeated litigant to petition this court to further litigate after this court has decided the case. In the *Post* case, it is said [italics my own]:

"Upon satisfactory showing being made in this court, leave has been granted in some instances *to attack judgments which have been affirmed here.* We are not, however, aware of any published decision which shows such leave to have been

granted. It is manifest that this court must reserve to itself the right to determine each particular case from the showing made, and no general rule can be announced as applicable to all cases. *Certainly no permission can be granted to disturb the judgments affirmed or entered by this court unless it is made reasonably to appear that the ends of justice require it.* But the precedent of entertaining and considering such applications has already been established. Since our published reports contain nothing upon this subject, as far as we are now informed, we have thought it proper to make these observations in this connection, in order that the precedent established may be more generally understood."

It will thus be seen that the test is not whether the court below has passed upon the same question and has entered judgment, but whether the subsequent showing is sufficient to invite the interposition of this court to serve the ends of justice. In other words, is the showing sufficient to make it appear *prima facie* that the judgment does not serve the ends of justice? The judgment is not a bar to the right to petition. It is the basis of the right. To cure the delinquency of the court in rejecting the original petition without assigning any reasons therefor, the court now assumes to pass upon the sufficiency of the petition, and passes it off by holding that petitioners have not raised any new issue; that the effect of the petition is only to assert newly discovered evidence, that is, to prove the perjury of the witnesses. This may be granted, but our cases require no more than this. Their logic is that, if it may be shown by other and more convincing testimony that the judgment rests in fraud, the court has discretion to interfere and grant the petition. We have never held that a petitioner in such cases must raise a new and independent issue. All he is required to do is to show that the judgment upon the tendered issue may be a fraud upon the court if facts theretofore undisclosed, and through no fault of the party, are heard by the court.

The rule of the *Post* case is no more than a declaration of the old chancery rule which allowed the filing of a bill of re-

view. It has been said that a petition to file such bill is, under the better practice, granted as a matter of right unless there are special reasons to the contrary. *Seymour v. White County*, 92 Fed. 115.

If the petition is sufficient—within the rule that the new matter has come to the knowledge of the petitioner for the first time since the period at which he could have made use of it in the suit, and it could not, with reasonable diligence, have been discovered sooner, and is of such character that if it had been brought forward in the suit it probably would have altered the judgment or decree—the court will hear the merit of the petition. 3 Ency. Plead. & Prac., 587, 588; *Owens v. Adm'rs of Wm. Forbe*, 9 Fla. 325; *Finlayson v. Lipscomb*, 16 Fla. 751; 2 Daniell, Chancery Pleading and Practice (6th Am. ed.), p. 1578; Story, Equity Pleadings (10th ed.), § 412 *et seq.*

The rule which should govern this case is best stated in *Ocean Ins. Co. v. Fields*, 2 Story (U. S.) 59, 75, 78, by Judge Story, who, after stating the rule of diligence, says:

"Now, the very reason, upon which the present bill is founded, is, that this, a perfect and valid defense at law, was by the fraudulent concealment of the defendant, and the total ignorance of the plaintiffs in the facts, incapable of being set up to the original action; and the recovery was, therefore, inequitable and iniquitous. It would be against all the principles of a court of equity, to allow one party to practice a fraud upon another innocent party, and by another act of fraudulent concealment recover a judgment against him founded upon the prior act; and then to be permitted to assert this double iniquity as a bar to all equitable relief against the judgment. Upon this ground, alone, the objection would be unavailable.

"Now, I agree, that mere cumulative evidence to the fact of fraud or any other leading fact not discovered since the trial, will not ordinarily constitute any just ground for the interference of a Court of Equity to grant relief, for the solid reason, that it is for the public interest and policy to make an end to litigation, or, as was pointedly said by a

great Jurist, that suits may not be immortal, while men are mortal. But I do not know, that it has ever been decided, that, in an assignable case, where the defense has been imperfectly made out at the trial, from the defect of real and substantial proofs, although there were some circumstances of a doubtful character, or some presumptions of a loose and indeterminable bearing before the Jury, and afterwards newly-discovered evidence has come out, full, and direct, and positive, to the very gist of the controversy, a Court of Equity will not interfere to grant relief and to sustain a bill to bring forth and try the force and validity of the new evidence. My recollection does not furnish me with any case, where a doctrine so strict and so binding has been positively upheld and pronounced. The disposition of Courts of Equity, upon this head, seems, as far as I can gather it, not to encourage new litigation in cases of this sort; but, at the same time, not to assert their own incompetency to grant relief, if a very strong case can be made out. *A fortiori* all reasoning upon such a point must be powerfully increased in strength, when it is applied to a case, which, upon the face of the bill, is composed and concocted of the darkest ingredients of fraud, if not of crime. At all events, it would be an extraordinary course for a Court af Equity to pronounce such a judgment in such a case upon a demurrer, rather than to retain it for a final adjudication upon a hearing of the merits, where the full pressure of the whole facts, and the weight of all the attendant circumstances known at the trial and discovered since, may be fully brought before it. While the Court would not be disposed lightly to interfere with the verdict of the Jury, upon the point of fraud, it might well deem itself at liberty to look deeper into the case upon new evidence which might justly, if known at the time, have changed the verdict of the jury."

It will be seen, by reference to the authorities, that the general rule is that a bill of review will not lie where the only object to be obtained is to cumulate testimony, but to this rule there is a well defined and well understood exception. It is not always clear in the opinions, and yet it may be safely said that it enters as a controlling feature in almost every case where the right to attack a judgment, after final judg-

ment on appeal, has been permitted. The exception to the rule pertains where the testimony offered is such that if it had been received the court would have probably decided the other way. It is applied where an independent or, as is sometimes said, an extrinsic or collateral fact is made to appear, or where circumstances are disclosed which, if they had been received, would have made the judgment improbable, and there has been no lack of diligence or vigilance on the part of the petitioner.

Lord Kingsdown, in pronouncing the opinion of the privy council in *Hosking v. Terry*, 8 Jur. (N. S.) 975, is said to have given the best resume of the law on this subject that has been written:

"The party who applies for permission to file a bill of review, on the ground of having discovered new evidence, must show that the matter so discovered has come to the knowledge of himself, or of his agents, for the first time, since the period at which he could have made use of it in the suit, and that it could not, with reasonable diligence, have been discovered sooner; and, secondly, that it is of such a character that if it had been brought forward in the suit it might probably have altered the judgment." *Traphagen v. Voorhees*, 45 N. J. Eq. 41, 46, 16 Atl. 198.

I might quote from the opinion of judges and text writers without number, but I find no happier expression in the books than that employed by this court in *Post v. Spokane, supra*. All cases which rest upon right reason are consistent with the ordinance of Lord Bacon, who said:

"No bill of review shall be admitted on any new proof which might have been used, when the decree was made. Nevertheless, upon new proof that has come to light after decree made, which could not possibly have been used at the time when decree passed, a bill of review may be grounded."

Surely appellants have brought themselves within these rules. The error of the court lies in the fact that it has confused the rule. It has assumed that the production of other witnesses would only cumulate the testimony from which per-

jury could be inferred. But this is not so. The test is not whether witnesses will but add to the number theretofore sworn and who have already testified upon certain material facts, but rather, does the proffered testimony tend to discredit the testimony by proof of facts not disclosed upon the trial and which were within the knowledge of the successful party and which no reasonable diligence could have uncovered. The understanding that fraud invariably hides in the shadows of silence is never lost sight of under the true doctrine.

While many cases lay down the broad statement that a judgment will not be reviewed where no more is shown than that some witness has perjured himself or where the judgment rests in perjury, we think that no case can be found denying relief where the testimony subsequently discovered makes it most likely that the whole testimony, as well as the the subject-matter of the suit, can be said to be perjured and false. In the Standard Encyclopedia of Procedure, vol. 4, p. 442, it is said:

"Perjury and fraud, when alleged as ground of review, must have had, to be available, a controlling interest in the decision upon the merits."

In *Taylor v. Nashville & C. R. Co.*, 86 Tenn. 228, 6 S. W. 393-395, Judge Lurton said:

"This brings us to the question as to whether ignorance of the existence of a defense, and the absence of all circumstances of suspicion, will not, as against a plaintiff guilty of conscious *mala fides* in the obtention of any judgment, excuse any effort to present a defense of which the defendant is totally unaware, by reason of the artfulness with which the fraud of the plaintiff was concocted and concerted."

After a very able discussion, that learned judge draws the following conclusion:

"We are fully attentive to the necessity of maintaining the conclusiveness of a litigation terminated by a judgment at law, and of the wisdom of the rule which casts the responsibility for an unjust judgment upon the party whose negligence led to such a result. But that a court of equity, under

the circumstances of this case, could not restrain the fraudulent plaintiff, Taylor, as between himself and the victim of his conscious dishonest conduct, would be an unendurable reproach upon the methods and machinery of that tribunal. The general rule which holds a party negligent who fails to develop every fact which would defeat a recovery upon an iniquitous demand is a reasonable rule, but it has its qualifications and reasonable limitations; and we hold that where a judgment was obtained through the *mala fides* of the plaintiff, who at the time knew that the judgment was contrary to the facts and the truth, and where it further appears that the defendant was at the time ignorant of the existence of the very facts which make the judgment unconscionable, and when there was nothing in the circumstances of the litigation or the trial calculated to arouse suspicion of a prudent man to the fact of a fraud being practiced, a court of equity will interpose and restrain proceedings upon such a fraudulent judgment; and the fact that the defense could have been made at law, and that the evidence was accessible, will not, in such a case, be such negligence as to restrain the exercise of the jurisdiction of this court."

This is but another way of saying that a court of equity will not tolerate a fraud where the fraud so taints the judgment that it ought not to stand. The court, in *Wonderly v. Lafayette County*, 150 Mo. 635, 51 S. W. 745, 73 Am. St. 474, 45 L. R. A. 386, after reviewing many decisions of the supreme court of the United States, says:

"But when the defendant is prevented by the fraud of the plaintiff from making the defense, and when as in this case the defense rests in the peculiar knowledge of the plaintiff and he conceals it from defendant, the fraud attaches to the judgment itself and vitiates it."

A court has power to protect itself and its judgments from the fraudulent and iniquitous conduct of litigants. But the right should be exercised within the limits of a sound discretion. From the very nature of things, no hard and fast rule can be laid down. Each case must depend upon its own particular facts. If this be not so, it would be hard to conceive of a case where the result of a review, if successfully waged,

would not tend, inferentially at least, to show perjury. As said by Chief Justice Marshall, in *Marine Ins. Co. v. Hodgson*, 7 Cranch (U. S.) 332:

"Without attempting to draw a precise line to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said, that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law; or of which he might have availed himself at law, but was prevented by fraud or accident unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery."

An equitable suit for the review of a judgment at law is akin to a motion for a new trial upon the ground of undiscovered testimony, and should be heard if it appears *prima facie* that a fraud has been perpetrated on the court and the petitioning party could not, by ordinary diligence, discover the fraud in time to submit evidence of it to the court in an original proceeding.

If a petition is to be dismissed with the broad statement that the court will not hear a petitioner who comes offering proof of the perjury of the prevailing party, the court would be powerless "to serve the ends of justice" although it were shown, by the confession of the prevailing party, that he imposed a fraud upon the court by his own false evidence, for the perjury would be the same whether proved by other witnesses or by the confession of the party. In other words, under the rule laid down by this court, we cannot take into account the nature of the proof, if the result of the proof, of whatever kind, went no further than to show that the judgment rested in perjury.

The court of appeals of Virginia found no such difficulty in the case of *Connolly v. Connolly*, 32 Gratt. (Va.) 657. In that case a will had been admitted to probate. The issue in the original action was whether the will had been forged. A verdict of a jury had been taken, and upon it the will was ad-

mitted to probate as a valid will. An appeal had been taken, and a decree entered affirming the judgment of the lower court. Thereafter a certain person, being in fear of death, made confession to a priest that he had written the questioned document. The capacity of the petitioner to ask for a writ of review was challenged. This being granted, the court did not seriously question the sufficiency of the bill. It found that the petition had all the requisites of a proper bill:

"(1) The evidence was discovered after the decree was rendered and affirmed.

"(2) It could not have been discovered before by the exercise of reasonable diligence.

"(3) It is material, and such as, if true, ought to produce, on another trial of the issue, a different result on the merits.

"(4) It is not merely cumulative."

In the general discussion the court said:

"Since the sentence, she [the petitioner] has discovered the fact which could not have been sooner discovered by the use of the most extraordinary diligence, that the paper established in that proceeding as the will of her uncle was forged after his death by a man whose name is given in the bill, and who makes a written confession of his crime under circumstances of great solemnity. The statements of her bill, on a motion for leave to file it, must be taken as true. Her prayer is that the former proceedings may be opened, and that she may be allowed the opportunity, hitherto not afforded her, of being heard, and that she may be permitted to make good her allegations and have the spurious paper annulled.

"Is it possible that the law provides no remedy, can give no relief in such a case? Is the appellant, under the circumstances shown by her bill, to continue bound, and to be forever barred of her rights, without being heard, or having an opportunity of being heard?"

But granting that the holding of the court is sound when applied to a proper state of facts, it should not be held to control the instant case. The *fact* litigated in the former

trial was whether the signature of Sarah J. Brown was genuine or false and forged. The *fact* submitted in the case at bar is independent and collateral. No testimony to sustain it was available, nor could it have been discovered except at the will of those who have been willing to speak after the controversy seemed to have been closed. It is that Nellie Waterhouse, now Nellie Camp, did herself sign the purported will, and that a conspiracy existed to defeat the "ends of justice." The issue in the former case was: Did Sarah J. Brown subscribe her name with her own hand in her lifetime? The issue tendered by the bill in the present case is that Nellie Camp wrote the signature. The identity of the forger was not an issue in the former case. There was no testimony one way or the other.

This court has followed the general rule that relief by bill of review will be sparingly granted. It is stated in *Meeker v. Waddle*, 83 Wash. 628, 145 Pac. 967:

"If decrees were to be set aside upon the mere ground that they were based upon perjured testimony, decrees might never become final, for the decree which held that a former decree was founded upon perjured testimony might itself later be attacked upon the ground that it was procured by perjured testimony, and so on *ad infinitum*. We are convinced, therefore, that there was not sufficient facts either stated in the complaint or proven at the trial by respondent to entitle respondent to recover, and that the judgment of nonsuit moved for by appellant should have been granted."

This rule was followed in *Robertson v. Freebury*, 87 Wash. 558, 152 Pac. 5, L. R. A. 1916B 883.

See, also, *McDougall v. Walling*, 21 Wash. 478, 58 Pac. 669, 75 Am. St. 849; *Friedman v. Manley*, 21 Wash. 675, 59 Pac. 490.

But as I read the cases, they do not deny that the relief will be granted in a proper case. In the *Meeker* case, it is said:

"Decrees in a court of justice cannot be set aside on collateral attack as being fraudulently obtained upon the sole

ground that they were obtained upon perjured evidence, without some other extrinsic and collateral fact entering into and constituting fraud in the transaction. To hold otherwise would be to lead ultimately to bewildering and endless uncertainty and confusion."

The court then suggests, quoting from the *McDougall* case:

"Perjury is not specified in our statute as a distinctive ground for vacating a judgment. There must, at any rate, be connected with it such circumstances as will relieve the opposite party from all implication of want of diligence, and deceive him completely in the nature of the testimony."

The same quotation is made in the *Robertson* case, and it is said that our own decisions recognize that a showing of some extrinsic or collateral fraud which prevented a fair trial is sufficient, although it is immediately followed by the same quotation from *Pico v. Cohn, supra,* which is used in this case and which, if followed literally, would deny the right to a review entirely, and which is, in its very words as well as spirit, opposed by the reasoning and logic of the case of *United States v. Throckmorton,* 98 U. S. 61, which was cited with approval in the *Meeker* case.

We have held, as most all courts have held, that a decree of divorce will be set aside when it is shown that a fraud has been practiced upon the losing party or upon the court. *Graham v. Graham,* 54 Wash. 70, 102 Pac. 891. It would seem that there should be no difference in principle between a divorce case and a civil action where "the ends of justice" have been defeated.

From the almost limitless number of authorities, I deduce the following principles: The right to attack a judgment by an independent proceeding rests in equity. It does not exist as a matter of right, but rests in the sound discretion of the court. It will not be tolerated simply to prove perjury, but if the perjury is such that the judgment, if allowed to stand, will operate as a fraud upon the court or defeat the ends of

justice, sound discretion demands that it be allowed.  Or, taking into consideration all the facts and circumstances, if the proof offered tends to prove fraud or perjury by some independent or collateral circumstance, the action will be allowed almost as a matter of right.  These principles are amply sustained by our own decisions, more especially by the *Post* case, the *Graham* case, and *Denny-Renton Clay & Coal Co. v. Sartori*, 87 Wash. 545, 151 Pac. 1088, where the distinction between the right to attack a judgment upon the ground of evidence discovered after the year, and upon the ground of a fraud upon the court or upon the adverse party, is clearly pointed out.  In that case it is said: "Courts of equity are always open for relief against fraud," and: "Equity will always relieve against fraud whenever discovered," citing *Peyton v. Peyton*, 28 Wash. 278, 68 Pac. 757, and further: "Where the relief is on the ground of newly discovered evidence, it must appear that there was some fraudulent concealment of the facts on the part of the adverse party."  The *Denny* case may be accepted as the *alpha* and *omega* of the law, and petitioners are well within its doctrines.

In this case, the court was called upon to test the validity of a will purporting to have been executed by Sarah J. Brown on a day certain.  The instrument had been admitted to probate and carried the legal presumptions of regularity and verity.  The burden of proof was on the petitioners.  If a showing that, months after the purported date, the will was still unexecuted and that Nellie Camp and George McFarlane were conspiring to defeat the ends of justice for the sake of their own pecuniary gain does not make a case for the equitable interposition of the court, or is not a collateral or independent fact, then no case can be imagined where relief should be granted, and all that has ever been said about courts being zealous to guard their records from the taint of fraud had better have been left unsaid.

The burden of counsel's opposition to the shedding of fur-

ther light upon this most questionable transaction is that it would open the case and there would be no end to litigation. But this is necessarily so in every case where the relief is granted. If such contention ended inquiry, courts would be powerless to serve "the ends of justice," for a judgment resting in fraud or perjury would be as sound as one resting in truth.

The demurrer admits the truth of the allegations of the complaint. The court has assumed in this hearing to pass upon the insufficiency of the original petition. Having inherent power to do justice, we ought to hold that the present complaint—which charges fraudulent concealment, the test of which is whether due diligence and vigilance would have uncovered the fraud—is a sufficient petition within the rule that requires permission of the court to maintain the action, instead of barring the right because permission, although applied for, had not been obtained. Or we should hold, if upon no other authority than the *Denny* case, that petitioners have the right to maintain an independent suit in equity to uncover the inequity and fraud which, upon the face of the complaint, inheres in the judgment.

The showing made by the petitioners, the truth of which is admitted by the demurrer, makes it possible to inquire further into the probable cause, which, after all, is the foundation of the right to petition in cases of this kind, and to say that, when the proffered testimony is considered in connection with much that is in the record, there is much to sustain the belief that the questioned signature of Sarah J. Brown, as well as the entire preparation of the will with the possible exception of the signature of Griffith, is the handiwork of Nellie Camp. The signature has none of the characteristics of Sarah J. Brown. It has all of the characteristics of the handwriting of Nellie Camp.

Aside from the character of the handwriting which, as I have said, bears inherent evidence of being the writing of Nellie Camp, the will itself bears the earmarks of Mrs. Camp.

It speaks of Charlie McFarlane and of Clarance Godfrey. In such writings as we have available, Mrs. Camp uses Charley and Clarance habitually. Mrs. Brown, in all the writings which we have, says Charles, Master Charles, and Clarence. The will uses the words "with out." We find this form in the writing of Mrs. Camp. It was shown in the original petition that, notwithstanding Mrs. Camp's denial at the trial, she could in fact operate a typewriter, and that she had at the time used a typewriter.

These are but a few of the many suggestions that might be made from the record in aid of the complaint, and if the complaint needed any aid, and I believe it does not, these circumstances, and others that might be mentioned, ought to be sufficient to warrant the court in holding that petitioners should have a right to maintain a suit in equity to make further disclosure of what seems to me to be the most glaring fraud upon the courts and upon the parties interested that has ever come under my notice.

## ON REHEARING.

CHADWICK, J.—A majority of the judges are voting to deny a petition for rehearing. The case is closed. I therefore feel warranted in illustrating the point I have so unsuccessfully advanced by alluding to facts outside of the record. This case has excited the interest of those who specialize in the examination of questioned documents. The exhibits and scores of photographs have been made and examined by men whose only interest is that of those who have a professional pride in a little appreciated but most important art. The examiners, some of them being the foremost in America, have with one accord pronounced the will a forgery. Now if petitioners had asked to open the case upon this ground the court notwithstanding might well deny the petition. Experts in handwriting were examined at the trial, and the testimony of others, however eminent in their profession, would be cumulative as to the sole issue tried out. But where, as here, the

issue rests in new and extrinsic facts not inquired into, and which if proved would demand a different decree, the right ought to be given. In the first case Nellie Camp did not testify that she did not write the will. She was not so charged. Neither was she questioned. The present proceeding is a direct charge that she did forge the will in conspiration with another. How can it be said that a case will not be opened to show perjury, when the party assailed has never testified to the fact.