ANNA DANFORTH

*v.*

GEORGE W. DANFORTH.

*Filed at Ottawa March 28, 1883.*

1. DIVORCE—*refused, if the parties collude to procure one.* The courts will never grant a divorce when it is made to appear that there is an agreement that the defendant will not defend against a decree, or that the parties have colluded to obtain a divorce, or so as to produce that result; and when it is shown that at the same time at which a decree of divorce is entered, an agreement was entered into between the parties that the divorce should be granted, fixing the alimony to be given, it is error for the court to refuse a motion to vacate the decree and allow a defence to be made.

2. SAME—*decree for, may be changed or vacated.* A decree of divorce, together with the record of other proceedings during the term it is entered, remains *in fieri*, and under the control of the court to amend, change or vacate, as justice may require; and if, during the term, it is shown that the divorce was the result of collusion, or was aided or brought about by a collusive agreement of the parties, the court, on motion of either party, should vacate the decree and let in the defence.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Iroquois county; the Hon. FRANKLIN BLADES, Judge, presiding.

Messrs. DOYLE & MORRIS, for the appellant:

Collusion may be by keeping back evidence of what would be a good answer, or by agreeing to set up a false case. *Jessup* v. *Jessup*, 2 S. & T. 301.

Collusion is an agreement between husband and wife for one to represent in court that the other has committed a breach of the marriage relation, for the purpose of obtaining a divorce, and it will bar a divorce. 2 Bishop on Marriage and Divorce, sec. 28; *Mansfield* v. *Mansfield*, Wright, 284; *Lloyd* v. *Lloyd*, 2 S. & T. 667; *Williams* v. *Williams*, 1 Hag. Con. 299.

As to what evidence of collusion will prevent a divorce, see *Goodwin* v. *Goodwin*, 4 Day, 343; *Stoutenberg* v. *Lybrand*, 13 Ohio St. 228; *Sayles* v. *Sayles*, 1 Foster, 312; *Weeks* v. *Hill*, 38 N. H. 199; *Collett's case*, 2 Mod. 314; *Davenbaugh* v. *Davenbaugh*, 28 Am. Dec. 445; Wharton on Evidence, sec. 978.

Confessions are to be rigidly scrutinized, to see that they bear no marks of collusion. *Matchin* v. *Matchin*, 6 Barr, 332; 2 Bishop on Marriage and Divorce, 244.

Under the peculiar circumstances of this case the court erred in refusing to open the decree and let in the defence.

Messrs. KAY & EVANS, and Mr. CHARLES H. WOOD, for the appellee:

It is true the decree shows there was an agreement for an allowance to the wife, but it also shows this was wholly disconnected with the action of the court in granting the divorce. This is a practice that is authorized by law. *Marvin* v. *Collins*, 48 Ill. 156; *Buck* v. *Buck*, 60 id. 241.

It is no collusion if the plaintiff has suffered real injury, and in good faith seeks relief,—that both parties wish the divorce. 2 Wait's Actions and Defences, 591; *Hopkins* v. *Hopkins*, 39 Wis. 167. See, also, 2 Bishop on Marriage and Divorce, sec. 28 a, sec. 29.

The petition on which the judgment vacating the decree is to be rendered, must fully and specifically set out the particular fraud relied upon.   2 Bishop on Marriage and Divorce, (6th ed.) sec. 753 b ;  *Groff* v. *Groff*, 14 S. & R. 181 ; *Adams* v. *Adams*, 51 N. H. 396.  This is not done in this case, either in the motion filed or in the affidavits presented by appellant to sustain her motion.

Again, because of the grave consequences of annulling a decree, the evidence must be absolutely clear and conclusive. 2 Bishop on Marriage and Divorce, sec. 753 b ;  *Gechter* v. *Gechter*, 51 Md. 187 ;  *Lord* v. *Lord*, 66 Maine, 265 ;  *Hopkins* v. *Hopkins*, 39 Wis. 167.  So far from being clear, we submit that the affidavits of appellant do not make a *prima facie* case of fraud and collusion, as against the appellee.

Again, a decree of divorce will not be set aside on the application of a person who is himself a party to the fraud. *Budham* v. *Phillips*, Ambler's Ch. 763 ;  *Adams* v. *Adams*, 51 N. H. 397 ;  *Tebbetts* v. *Tilton*, 31 id. 287 ;  *Nichols* v. *Nichols*, 25 N. J. Eq. (10 C. E. Green,) 60.

Again, the law requires that it should be made apparent that the party moving to set aside the decree is acting from good motives, and not from any expected personal advantage.   *Singer* v. *Singer*, 41 Barb. 139 ;  *Kirrigan* v. *Kirrigan*, 2 McCarter, (N. J.) 147.

Again, the appellant has had the full benefit of the decree, by taking under it the large amount of money that appellee allowed her.   Having ratified it, she can not now object that it is not obligatory upon her.  *Brown* v. *Simpson*, 9 B. Mon. 458.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill filed by appellee, against appellant, for a divorce.   The ground alleged was extreme and repeated cruelty.   On the return day of the summons an answer was filed by defendant fully denying all the acts of cruelty and misconduct charged in the bill, and on the same day a decree

of divorce was entered dissolving the marriage relation between the parties. The decree gives to her $11,000 in full of alimony, dower, and all and every claim, of any kind and nature whatsoever, against complainant and his estate. Afterwards, and at the same term, appellant made a motion to set aside the decree, and to be let in to make a defence. The motion was based on affidavits that the decree was obtained by fraud and collusion, and without her consent. She swears that at a meeting between appellant and a number of his friends and relatives with her attorney, (she being at his office, but not seeing them, and without understanding or knowing the purport of the arrangement,) an agreement was entered into between appellant and her attorney, which was signed by them; that she did not sign it, or authorize any one to sign it *for her*. The motion was urged on two grounds: First, that her attorney, in collusion with appellant, had made the agreement without her consent and against her will, and signed the agreement contrary to her will; and second, that the stipulation is, or amounts to, a collusive agreement that defence should not be made against a decree for a divorce.

In the view we take of the case we deem it unnecessary to consider the somewhat conflicting statements in the affidavits filed on the hearing of the motion. We shall therefore only consider the purport and effect of the stipulation. It is this:

"It is hereby stipulated by the undersigned, that the within sum of $29,000 is deposited with the Union National Bank, Chicago, by George W. Danforth, as a special deposit, to be paid to Anna Danforth whenever she or her attorney produces a certified copy of a decree of divorce from said Anna Danforth, in the circuit court of Iroquois county, Illinois, said divorce to be granted on or before November tenth, (10,) 1881, or said money to be returned to said Danforth. She is also to produce a certificate of the clerk of said circuit court that the lands described in a certain deed, dated Octo-

ber 28, 1881, from George W. and Anna Danforth to Almon
G. Danforth, are free and clear of all incumbrances; and
further, shall also deliver to said George W. Danforth a cer-
tain contract of sale of land made by said Anna Danforth to
one John F. Raumets and ——— Fry, duly assigned by her
to said Almon G. Danforth.

ANNA DANFORTH,

GEORGE W. DANFORTH.

"E. G. Asay, sub. for Anna Danforth."

It is conceded, and such is the unquestioned law, that if
there is an agreement in a divorce case that the defendant
will not defend against a decree, or the parties collude to
obtain a divorce, or so as to produce that result, the relief
will not be granted.   It is upon the principle that the parties
do not have the only interest, but the public also has an
interest in the marriage relation, and in its proper mainten-
ance; and the courts have ever been vigilant in preventing
divorces from being obtained by fraud or collusion of the
parties.   But this stipulation, whether obtained by collusion
between the attorney of appellant and appellee, or whether
appellant was fully informed and freely consented thereto, is,
we think, in spirit and intent, an agreement that the divorce
should be granted, as well as for the amount of alimony that
should be paid.   The stipulation was procured by the attorney
of appellant, to be used, and was used, on the trial.   It stip-
ulates that if she or her attorney shall produce, before the
10th day of November, 1881, a copy of a decree of divorce in
the case then pending, there should be paid to her $29,000.
The agreement does not state that any portion of that sum
was to be in part or in full of alimony.   It, however, may
be inferred from the agreement that the whole was for real
estate appellant was to convey to A. G. Danforth, a brother
of appellee.   Is it not manifest that, appellant's attorney
having agreed she should produce a decree of divorce by the
time named, it was intended he should aid in procuring the

divorce, or at least would not oppose it; and if appellant knew the contents of the agreement, can any one doubt that she intended and desired he should? The effect of this agreement must have been precisely the same as had appellant and appellee agreed that she would do nothing to prevent him from obtaining a divorce, and, if necessary, she would assist for the purpose. It is not the mere form of words, but it is the intent,—the thing or purpose intended to be accomplished,—that constitutes the agreement, when that can be determined from the instrument itself. Here the manifest intention was, that complainant should obtain the divorce and appellant to receive the money. It is true an answer was filed, but no evidence was produced, notwithstanding appellant swears that facts existed that would, if proved, have prevented the decree that was obtained; yet the decree was obtained, as was expected and intended when the agreement was executed.

There was not improper delay in entering the motion to set aside the decree. It was made at the same term, and whilst the court had control over all proceedings had at the term. The decree had not become an unalterable record. It, with the records of other proceedings of the term, was still *in fieri*, and under the control of the court to amend, change or vacate it, as justice might require.

But the case of *Bowman* v. *Bowman*, 64 Ill. 75, is referred to as sustaining the decree of the court below. That case, in its main features, is unlike this. There was in that case nothing that could be construed into an agreement that defendant would not resist a decree for a divorce. That is the important question in this case; and as there was an agreement in this case that had the effect and operated and produced such a result, it was error for the court to refuse to vacate the decree and permit appellant to defend the suit, and for that error the decree of the Appellate Court must be reversed, and the cause remanded.

*Decree reversed.*