# CHARLESTON.

## BACON *v.* BACON.

Submitted March 2, 1909.   Decided February 28, 1911

1. DIVORCE—*Default—Setting Aside.*

   Under section 14, chapter 124, Code 1906, authorizing a defendant who has not been served with process in this state, and who did not appear before judgment or decree, to file a petition to have the proceedings reheard, a defendant in a divorce suit who was personally served with process in another state and who did not appear, may within one year from the time he or she is served with a copy of the decree, or if not served with a copy of the decree, then within five years (as the limitation was in 1906) after the date of the decree, file a petition to have the cause reheard.

2. SAME—*Desertion—Separation by Agreement.*

   If the separation of husband and wife is by agreement, or if the husband assents to, or acquiesces in, the wife's separation from him, he cannot maintain a suit for divorce on the ground of desertion. Such separation does not amount to desertion or abandonment in law.

   (BRANNON, JUDGE, absent.)

Appeal from Circuit Court, Summers County.

Suit by N. Bacon against Julia R. Bacon. Decree for plaintiff, and defendant appeals.

*Reversed.*

*R. F. Dunlap,* for appellant.

*T. N. Reed,* for appellee.

WILLIAMS, PRESIDENT:

N. Bacon obtained a decree of divorce from bed and board from his wife Julia R. Bacon, in the circuit court of Summers county, on the alleged grounds of abandonment and desertion. Process was served upon defendant in the State of Pennsylvania on the 20th day of December, 1905. Defendant did not appear. Depositions were taken upon notice given by publication, and on the 13th of March, 1906, the decree was pronounced. Defendant returned to Summers county, West Virginia, and was served with a copy of the decree, in said county, on May 5, 1906. On June 22, 1906, she asked and obtained leave to file her petition to have the cause re-opened and reviewed. Plaintiff demurred to, and answered the petition, denying its allegations. Depositions were then take on behalf of both petitioner and plaintiff, and the cause was again heard March 29, 1907, and a second decree made confirming the former decree and dismissing the petition. From these two decrees petitioner has appealed.

The parties had been married, and had resided in Summers county for a number of years prior to the institution of the suit. Petitioner, not having been served with process within this state, had a right to appear, and, by showing cause against the decree, to have the case reheard as if no decree had been made. Section 14, chapter 124, Code 1906; *Martin* v. *Martin,* 25 W. Va. 579; *Haymond* v. *Camden,* 22 W. Va. 180; *Vance* v. *Snyder,* 6 W. Va. 25. Petitioner alleges good cause for rehearing. She had one year from May 5, 1906, the date on which she was served with a copy of the decree, within which to file her petition. She filed it on June 22, 1906, less than two months after that time. Process served on her, outside of the state, had no other effect than an order of publication would have had. Section 13, chapter 124, Code 1906. Section 14, chapter 124, Code 1906, which fixes the time within which she could file her petition for rehearing, expressly refers to section 25, chapter 106, but only for the purpose of adopting the manner and form of rehearing therein provided. It matters not whether she was, in fact, a resident or non-resident, for in either event there must have been personal service upon her, within the state, or its equivalent, in order to make the decree personal and binding as to

her. Personal service out of the state does not authorize a personal decree, or judgment.

It is not necessary to consider the objection made to the return of service by the Pennsylvania officer; because, even if the return is good, it shows a service outside of the state; and that would give petitioner the right to have the cause re-opened.

We are brought, then, to the consideration of the case upon its merits; and, after a careful review of the evidence, we are clearly of the opinion that plaintiff has not proven a willful desertion and abandonment, against his consent, on the part of petitioner. On the contrary, the evidence clearly establishes, at least, a collusion and connivance between the parties to obtain a divorce, if not an express agreement to do so. This is nothing more nor less than an attempted fraud on the court in which both parties were equally guilty. The law will not suffer a divorce to be obtained in this way; public policy forbids it. Abandonment and desertion, in order to entitle the complaining party to a divorce, must be willful and without justification, and it must be *against* the consent of the complaining party. Petitioner does not attempt to justify the separation; but, on the contrary, avers that it was by their mutual consent. Moreover, she confesses that their conduct was ill considered and hasty. She expresses a willingness on her part, if the husband will permit her to return, to resume the matrimonial relation, and to do all in her power to make their joint lives happy and the reunion agreeable and pleasant. There is no accusation of immoral conduct on the part of either. The evidence shows that it was simply a case of incompatibility of temper and disposition. Under our statute this is not a ground for divorce, or a just cause for desertion.

In *Alkire* v. *Alkire,* 33 W. Va. 517, this Court has defined desertion, as applied to divorce law, in Point 1 of the Syllabus, as follows: "Desertion, in divorce law, is the voluntary separation of one of the married parties from the other, or the voluntary refusal to renew a suspended cohabitation, without justification either in the consent or the wrongful conduct of the other." See also *Martin* v. *Martin, Id.* 695. Observe that this definition says that the desertion must be "without justification;" and also impliedly says that the *consent,* as well as

the *wrongful conduct,* of the other consort will afford justification. In other words, it clearly means that a separation by agreement or consent does not constitute a desertion in law If there is no legal desertion, it follows that there is no ground for divorce.

The same law is expressed in 14 Cyc. 611, as follows: "Desertion or abandonment consists in the voluntary separation of one spouse from the other, for the prescribed time, without ·the latter's consent, without justification, and with the intention of not returning."

"When a husband upon disagreement with his wife, and her declaring that she will not live with him, assents to her going where she chooses, and furnishes her with money for her support, and never insists as a condition of her support, that she shall perform her duties as a wife, although he asks and entreats her to come back, it has too .much of the character of a friendly arrangement to be called willful, obstinate, and continued desertion." *Goldbeck* v. *Goldbeck,* 18 N. J. Rep. 42. See also, *Herold* v. *Herold,* 47 N. J. Eq. 210.

Even if there were any room to doubt the fact that plaintiff expressly agreed to the separation, yet there can be no doubt, from the evidence, that he consented thereto, and furnished petitioner money with which to travel. Plaintiff says he did not have the money at the time, and borrowed it. In view of his own testimony, it cannot be said that the separation constituted abandonment and desertion as understood in the law relating to divorce. 14 Cyc. 644, and numerous cases cited in the notes.

The parties had a disagreement in April, 1905, and from that time until the 18th of the following September they occupied separate rooms in the home of the plaintiff. On the latter date they signed a written agreement to separate; and petitioner left for Pittsburg to visit a sister; later she went from there to Monterey, Mexico, to live with her brother. Plaintiff provided a wagon to carry her and trunk from their country home to the railway station at Talcott, and he accompanied her to the depot; he bought her ticket and traveled with her to Huntington; they put up at an hotel and occupied the same room and

bed.    They were together the following day until her train left
Huntington for Pittsburg, and he saw her board the train.

While petitioner was in Pittsburg plaintiff sent her money,
pursuant to the written agreement.    This agreement had been
prepared by an attorney on April 1, 1905, but was not signed
until the 18th of September.    It recites that the parties "have
mutually decided that they cannot agree and live amicably to-
gether as man and wife."    By its terms she releases all claims
upon his estate, present and future, in consideration of one
hundred dollars which is recited to have been paid in cash.
But it was to pay this that he sent her money to Pittsburg.
That the separation was by mutual agreement is proved by both
the language of the paper and the fact of its execution.    If the
separation was, in fact, a legal abandonment of the husband
by the wife, such as would entitle him to a divorce, it was not
necessary to bind her to release her marital claims upon his
estate.    Because, if she had been wholly in the wrong, the law
itself would afford his estate sufficient protection.    Desertion
itself would defeat such rights.    If any further evidence were
needed to prove the husband's consent to the separation, it
may be found in his own testimony.    On cross-examination, in
answer to the question whether he had made any objection to
his wife's going away, his reply is:  "I had for two years.  I
heard it until I couldn't stand it any longer and agreed that if
nothing else would do her that she could go."    Shortly after
petitioner was served with summons in the City of Pittsburg
and while still there, she wrote her husband a long letter, and
asked him to meet her at Huntington on her way to Mexico.
In this letter she writes:  "Tell me if I should wait for the
Feb. Court or whether I am at liberty to leave.  Do wish
you would meet me and tell me what to do from now until the
dreadful affair is completed."    By the "dreadful affair" she
evidently meant the divorce suit; because she acquaints her
husband of the fact in this letter, that she had been served with
summons.    She testified that she knew the summons was a
notice to her of such a suit.    Why ask his advice as to what she
should do, if there had been no previous agreement?    True,
plaintiff denies that there was any understanding between them
in relation to his procuring a divorce.    But the undisputed facts

and circumstances strongly corroborate petitioner's testimony wherein she says the divorce was to be obtained in pursuance of an agreement previously made between them. But, even if there was no express agreement, or understanding, in relation to a divorce, still the evidence proves beyond any question that the separation, at least, was by agreement. Such separation does not constitute legal abandonment, and is, therefore, no cause for divorce.

We will reverse the decrees pronounced on March 13, 1906, and March 29, 1907, respectively, and will enter a decree in this Court dismissing plaintiff's bill.

*Reversed.*