# CHARLESTON.

JOSEPH F. HAMILTON *v.* MARY A. HAMILTON.

Submitted January 18, 1921.    Decided January 25, 1921.

1. DIVORCE—*Misconduct Insufficient to Justify Desertion May Prevent Decree to Deserted Party.*

   Misconduct of one of the parties to the marital relation, not sufficient to justify the other in leaving the home, may nevertheless be sufficient to prevent the award of a divorce to the party guilty thereof, even though the other is guilty of desertion in the legal sense of the term. (p. 538).

2. SAME—*Burden of Proving Inequitable Conduct Barring Relief for Desertion Rests Upon Deserting Party.*

   In such case, the burden of proof of inequitable conduct barring relief rests upon the deserting party. (p. 538).

3. SAME—*Plaintiff Seeking Decree for Desertion Must Overcome Defendant's Prima Facie Case of Separation by Consent.*

   If, in a suit for divorce on the ground of desertion, the absent party makes out in evidence a *prima facie* case of separation by consent, the plaintiff, to obtain the relief sought, must clearly repel and overcome it by proof. (p. 539).

Appeal from Circuit Court, Marion County.

Suit by Joseph F. Hamilton against Mary A. Hamilton for divorce.    From a decree for plaintiff, defendant appeals.

*Reversed, and bill dismissed.*

*Rose & Barnes,* for appellant.
*Harry Shaw,* for appellee.

POFFENBARGER, JUDGE:

This appeal from a decree awarding a divorce from bed and board to a husband, on the ground of desertion by the wife, is prosecuted by the latter, upon the theory of lack of sufficient proof of the allegations of the bill.

At the date of their marriage, May 2, 1900, the appellant was a widow and the mother of six living children, although somewhat younger than the appellee. At that time, she and two of her daughters resided with her father who was a widower, in the City of Moundsville. After the marriage, the appellee took up his residence in the same family, and all remained there for about two years. The husband, who was a conductor on the Baltimore & Ohio Railroad, purchased property near the City of Fairmont, and all of the family moved from Moundsville to that place. Of the wife's children who had left home before the second marriage, one resided, or later took up his residence, in the City of Pittsburgh, Pa. Under the second marriage, two children were born, Anna V. Hamilton and Helen Hamilton, the former being about fifteen years old and the latter about fourteen, at the date of the alleged desertion. The former left home in February 1916 or 1917, and claims to have been sent or driven away by her father. The wife left the husband on the 14th day of May 1918, and took the younger daughter with her. The mother and daughters now reside in the City of Detroit, Michigan, with one of the wife's daughters by her former marriage.

The defense to the suit was based upon two grounds: (1) justification of the separation by reason of cruel and inhuman treatment; and, (2) the plaintiff's consent to the separation. For a good many years, the relation between the parties had not been ideal, harmonious nor happy. The husband had an irritable disposition and a violent temper. When the family moved to the property purchased, about two years after the marriage, the wife's two daughters living with her were, respectively, seven and thirteen years old, and she says he drove the older one off in that same year, 1902. The other one remained until she became thirteen years old, but was then forced to leave, according to the wife's testimony, by reason of the abuse of the husband. She was not violently driven away, however, for she went to Chicago, on a pass obtained for her by the husband, to attend school, her expenses being provided by her maternal grandfather. About five years later, she returned and one of her brothers who had come home to see her and

her mother was violently abused by the husband, and the wife says his abuse extended to her and the daughter as well as the son. She remained only a week or two. On this occasion which was four or five years before the separation, very violent and reprehensible conduct is attributed to the husband by the wife and at least two other witnesses. They say he told the son and daughter to "take their damned old mother and keep her." One of them says he told the son to take his mother and to "get to hell out of there." According to the testimony of other witnesses, he had little if any affection for his own elder daughter. On one occasion, he abused her for having permitted the younger one to wash the dishes in an improper manner. On another occasion, he abused both of them because they did not get up promptly and milk the cows and then refused to permit them to milk. On another occasion, before the departure of the elder daughter, he tore a necklace from her neck, which had been given to her by a young man, ordered her to leave the house and then pulled her hair, kicked her and made her go to bed. On one of the several occasions of trouble between him and this daughter, on account of her relations with her admirer, an uncle of hers residing at Benwood, West Virginia, happened to be present and suggested that she accompany him to his home and remain there for a while. This arrangement was assented to and the father procured a railroad ticket for her and permitted her to go. This occurred in February, 1916 or 1917. There is some controversy in the testimony as to whether she was sent away permanently, banished from home, or sent away only temporarily. The uncle says he told her he never wanted her to darken his door again, and she and other witnesses say he told the uncle to take her and put her in somebody's kitchen. It is significant that she never returned and that he made no effort to induce her to do so. At a time not very clearly disclosed by the record, but which seems to have been in the winter before the wife left, she had a serious affliction of one of her legs which confined her to her bed for about a month. During that period, the husband is said to have been indifferent toward her as well as irritable and abusive of other members of the family. He drove the cows away and put them in charge of a neighbor and would

have deprived her of milk necessary to her comfort, if the neighbors had not furnished it to her. In the spring after her recovery, he refused to permit her to work in the garden. During cold weather, he deprived her of sufficient fire. He permitted a fire in the stove in the kitchen, but refused to allow her to have sufficient fire in the sitting room. He would quarrel with her about replenishing or reviving the fire, and, when leaving the house, he would cover it up. According to her testimony, he had told her to leave and she expressed a willingness to do so, if he would permit her to take the younger daughter, Helen. He gave his verbal assent to her taking the daughter, but refused to relinquish her in writing. In his testimony, he denied that he had ever mistreated his wife, and introduced neighbors who testified that they had never heard him do so, nor seen any evidence of mistreatment. After this evidence had been introduced in support of his bill, the wife and other witnesses adduced by her testified to the specific acts of misconduct and abuse, here referred to, and he did not testify in rebuttal, nor specifically deny any of them.

It was proved and admitted that on the day of her departure, he objected to the removal of the boxes in which she had packed her belongings, including such of the household goods as she claimed, and importuned her to stay. At that time, he gave her seventy-five dollars in money, telling her, however, it was not given to her to defray the expenses of her trip. This gift or contribution was made at the suggestion of a neighbor and professed friend of both parties, and, at the time of the suggestion, the question arose as to what effect the gift might have upon the relation of the parties, and it was not assented to until after the advice of an attorney had been taken. Having been advised that he could make it, providing it was understood that the money was not given by way of encouragement of the departure or in aid thereof, he assented. The witness testifying to this says he had a conversation with the husband, two or three days before the wife left, and tried to induce him to get her to stay, and that he replied "To hell with her, I have enough to keep me." Although the husband denies knowledge of the intention of his wife to leave, this witness says he came to him before she left and asked if he had any boxes, saying

she wanted some to put her effects in, and the boxes were obtained from him. None of this testimony is denied in detail. It all stands uncontradicted, otherwise than by the plaintiff's general denial of mistreatment and of knowledge of the intended departure.

Plaintiff's continuous and persistent mistreatment of his wife for a long period of years, extending to the day of her departure, is established by a very decided preponderance of the evidence. The testimony of herself and her children specifying a number of instances of unjustifiable abuse of all of them, further shows that when he was not indulging in paroxysms of violent temper, he was sullen and morose, going for days and weeks and even longer without noticing or addressing members of the family. The wife says she was frequently told to leave and urged to do so. Some of the instances specifically mentioned are rather remote in point of time, it is true, but the nagging, annoyance and directions to leave continued down to the day of the defendant's departure. As has been stated, the plaintiff makes no response in his testimony to these specifications of misconduct. All we have is a general denial of mistreatment, supported by nothing better than the negative testimony of neighbors who do not seem to have spent much time in the home.

The conduct imputed to the plaintiff is manifestly insufficient to justify the action of the defendant in absenting herself from his home. It does not appear that, in any instance, he ever inflicted violence upon her, or endangered her personal safety, nor that she suffered any impairment of health, resulting from his treatment. She claims her health was impaired, but there is no proof of any specific ailment or particular degree of affliction. Mere incompatibility of temper does not constitute ground of divorce. Nor can a divorce be predicated upon mere discomfort of one spouse, occasioned by the misconduct of the other. To sustain these propositions, it is unnecessary to cite authority. But it does not follow that one who has occasioned a technical or legal desertion, by his own misconduct, can avail himself of it as a ground of divorce. In seeking the aid of a court of equity to obtain relief, a plaintiff must be free from fault; he must come with clean hands;

and this principle is as clearly applicable to a bill for a divorce as to any other. *Hall* v. *Hall,* 69 W. Va. 175. Of course, it was imcumbent upon the defendant to prove inequitable conduct on the part of the plaintiff, denying his right to avail himself of the admitted or proved desertion, as a ground of divorce, but she fully complied with this requirement, as has been stated.

In view of what has been said concerning the evidence respecting the plaintiff's assent to the departure of the defendant, it is hardly necessary to observe that it preponderates very heavily in her favor. Notwithstanding his admitted protest put in at the last moment, he gave her the means of departure, with knowledge of the use she intended to make of the money. He does not deny that, on numerous occasions, he told her to leave, nor that when he was advised to induce her to stay he had, with a certain degree of profanity, expressed his willingness for her departure and avowed his ability to take care of himself. To say the least of his conduct, it was equivocal and uncertain as regards his attitude toward her departure. It is possible, if not probable, that he desired not only to get rid of her but also of the relation existing between them. If he did, his conduct was very well calculated to lay the basis for the judicial relief he sought in less than two months after her departure. To succeed on the ground of desertion, a plaintiff must prove it. He must make out a clear case. He must overcome and remove by proof all doubt as to separation by consent, when the defendant makes a *prima facie* case thereof in proof. The marriage relation cannot be dissolved by mere consent and one who consents to a separation cannot make the absence of the other ground of divorce. *Bacon* v. *Bacon,* 68 W. Va. 747.

In her answer, the defendant sought a divorce from the husband, by way of affirmative relief. It is unnecessary to do more than refer to what has already been said of the character and extent of her evidence, to justify the action of the court in its refusal of the prayer of her answer.

Upon the principles and conclusions stated, the decree complained of will be reversed, and the plaintiff's bill dismissed.

*Reversed, and bill dismissed.*