## Mayberry v. Mayberry.

*Divorce — Residence — Averments of libel — Evidence—Proof—Master's report—Examination of whole case by court.*

1. Averments as to residence in a libel for divorce do not stand upon any higher plane as to conclusiveness than any other essential averments in the libel, and must, therefore, be established by competent evidence.

2. Evidence is not sufficient to sustain residence of libellant in Pennsylvania for one year prior to the filing of a libel in divorce, which shows that, prior to the beginning of such year, she had removed to another state with the intention to reside there permanently, and that she had returned to her old residence in Pennsylvania only on two occasions, and stayed there but a short time, with no intent to resume it as her residence.

*Divorce — Adultery — Collusion — Paramour — Connivance — Words and phrases.*

3. A divorce at the suit of the wife on the ground of adultery will not be granted where the only evidence of the adultery is that of the husband's paramour, and the evidence as a whole convinces the court that the suit was brought by collusion of the libellant, respondent and paramour.

4. The maxim that to obtain relief in equity, the plaintiff must come into court with clean hands, applies to divorce cases.

5. "Connivance" is the corrupt consenting of a married party to that conduct of the other of which afterwards complaint is made.

6. The report of a master relieves neither the trial court nor the appeal court from the duty of reviewing the testimony and deciding all cases of divorce upon the merits.

Consideration of master's report in divorce.  C. P. Schuylkill Co., Nov. T., 1926, No. 10.

*John W. Clemens*, for libellant.

BERGER, J., Feb. 28, 1927.—The master has recommended a decree in divorce on the ground of adultery. The parties were married Feb. 2, 1917, in Brooklyn, N. Y., and lived together in Pottsville, Pa., from March, 1924, to Feb. 13, 1926. The libellant had no marital relations with her husband after Jan. 9, 1926, but remained in their home, No. 404 Hotel Street, Pottsville, until Feb. 13, 1926, on account of her illness. Since then she has been earning her own living as housekeeper in a community institution, No. 124 Columbia Heights, Brooklyn, N. Y. The libellant has had no residence in Pottsville since Feb. 13, 1926, save that of her husband. She has been in Pottsville twice since she left on Feb. 13, 1926; once on or about Aug. 30, 1926, when she executed her libel in divorce, and again Jan. 14 and 15, 1927, the hearing before the master having been held on the latter date. On the occasion of each return to Pottsville, she stayed at her husband's place of residence, No. 404 Hotel Street, and occupied it jointly with him during her stays. She still receives notice of the premiums about to fall due on her insurance policies at the home and address of her husband. In August, 1925, the husband confessed to her that he had been committing adultery with one Emily Frew from May, 1925, until that time, when he also told her that Miss Frew was pregnant. At the libellant's suggestion, Miss Frew, after a conference held in the home of the parties to this action, in September, 1925, was invited to come to their home and remain until the child should be born, and this because the libellant says that at that time she and her husband were engaged in religious work for the International Bible Students' Association, and that both wanted to keep knowledge of Miss Frew's condition, as well as the parentage of the prospective child, from the public, and that she, the libellant,

also wanted to regain her husband's loyalty and affection. Miss Frew came to their house, pursuant to this invitation, Oct. 23, 1925, and remained as a member of the household until Jan. 9, 1926, when she gave birth to a male child, which lived about fourteen hours. After the birth of the child, Miss Frew continued to remain as a member of the household at No. 404 Hotel Street or until about Feb. 20, 1926, the libellant having left about a week earlier to take a position with the International Bible Students' Association in Brooklyn, N. Y., which makes her so self-supporting that she has not wanted anything further to do with her husband, nor to hold him to any obligation of alimony or support. From Oct. 23, 1925, until Jan. 9, 1926, the respondent spent many nights in bed with Miss Frew with the full knowledge of his wife, and also cohabited with his wife occasionally during that interval. After Jan. 9, 1926, the respondent spent all his time at night in Miss Frew's room, and then the libellant quarreled with him about it, and thereafter refused to submit to his embraces, so she says. The husband admitted to his wife several times (Aug. 30, 1926, and Jan. 14, 1927) that he had committed adultery with Miss Frew from Feb. 13, 1926, to Feb. 20, 1926, and she, having been subpœnaed as a witness by the libellant, appeared before the master and refused, after warning, to plead self-incrimination, and there testified to her own acts of prostitution with the respondent. The master, in considering this evidence, in order to determine whether it justified the recommendation of a decree, has discussed, *inter alia*, three controlling questions, as follows:

"1. Has libellant proved a residence sufficient to give this court jurisdiction?

"5. Was respondent's adultery after Jan. 9, 1926, condoned by libellant?

"6. Is the proceeding collusive?"

First, as to residence. The libellant has averred in her libel (paragraphs 3, 5, 6 and 7) that her place of residence at the time of the execution of her libel, Aug. 30, 1926, was, and for two years and four months immediately prior thereto had been, at No. 404 Hotel Street, Pottsville, Pa., with her husband, but these averments do not stand upon any higher plane as to conclusiveness than any other essential averments in the libel, and must, therefore, be established by competent evidence: Mauser v. Mauser, 59 Pa. Superior Ct. 275, 280, 281; Lynn v. Lynn (No. 1), 76 Pa. Superior Ct. 428, 431. The only direct testimony respecting the residence of the libellant in the County of Schuylkill at the time of the filing of her libel, and of her residence in the State of Pennsylvania for one whole year previously, is her own, as follows: "I regard Pottsville, Pa., as my home and No. 404 Hotel Street, Pottsville, as my residence. This is the residence of my husband; it is the residence in which we both resided when I left, as above testified. I was compelled to support myself and to go to Brooklyn to follow the employment in which I was engaged for years, and in which I am now engaged. I have stayed at No. 404 Hotel Street on the only two occasions in which I have come to Pottsville since leaving my husband, viz., last summer and last night. I have no other residence in Pennsylvania, and none anywhere else. My husband knew I stayed at No. 404 Hotel Street on the occasions mentioned." Is this sufficient to confer jurisdiction upon our court? We think it is not, and as supporting our statement refer to Gearing, Jr., v. Gearing, 83 Pa. Superior Ct. 423; Krusch v. Krusch, 6 D. & C. 639, 641; Chesebrough v. Chesebrough, 6 D. & C. 765, 768; 7 D. & C. 357, 361; Quinn v. Quinn, 21 Schuyl. Legal Rec. 95, 104, 105. The evidence in this case is convincing to us that the libellant, when she left Pottsville, Feb. 13, 1926, intended the

separation from her husband and his home to be permanent, and that she neither then, nor at any time since then, had any intention either to return to Pottsville or to the State of Pennsylvania as a place of residence. Under any view of the case, the libellant's residence or actual place of abode since Feb. 13, 1926, has been at No. 124 Columbia Heights, Brooklyn, N. Y., and that joinder of actual residence in the State one whole year prior to the filing of the libel, coupled with domiciliary intent, which is necessary to give this court jurisdiction of the libel, is entirely lacking.

Second, as to bad faith, collusion and connivance. The testimony of the libellant respecting what she saw—entirely apart from any confessions made to her by the respondent, or the testimony of Miss Frew given before the master—in the conduct of her husband and Miss Frew at No. 404 Hotel Street, Pottsville, from Oct. 23, 1925, to Jan. 9, 1926, and thereafter during her alleged illness, until she left for Brooklyn, Feb. 13, 1926, fully supports the conclusion that during those two periods an adulterous relation existed between the respondent and Miss Frew. It must, therefore, be presumed, if the fact that the respondent and Miss Frew continued to live under the same roof from Feb. 13 to Feb. 20, 1926, be established by competent evidence, that the previous illicit relations continued: Smith v. Smith, 4 Paige's Chancery Reps. (N. Y.) 432, 437. The libellant testified that she knew Miss Frew remained at No. 404 Hotel Street for some time after she went to Brooklyn, Feb. 13, 1926, but this is clearly mere hearsay. It follows that the only competent testimony tending to sustain the charge of adultery between Feb. 13, 1926, and Feb. 20, 1926, is that of Miss Frew, who, when testifying before the master, said that her appearance was solely in response to subpoena and not by arrangement with either of the parties to the action—a statement which we do not credit. The libel as originally filed alleged the commission of adultery at divers times from Oct. 25, 1925, to Dec. 1, 1925, but when the libellant discovered that by her acts of condonation she had precluded herself from obtaining a divorce based on the acts of adultery committed prior to Jan. 9, 1926, she was permitted to so amend her libel as to charge that the adulterous acts were committed from Oct. 25, 1925, to Feb. 20, 1926. Thus, the uncondoned acts of adultery alleged against the respondent, which the master has found true, which finding we approve, covered the period from the birth of Miss Frew's child, Jan. 9, to Feb. 13, 1926, during which time the libellant remained as a member of the household at No. 404 Hotel Street, and the period from Feb. 13, 1926, to Feb. 20, 1926, during which period the respondent and Miss Frew were together alone in the apartment. In Romich v. Romich, 3 Dist. R. 617, Endlich, J., said that considerations of public morality may properly induce a court to apply stringent tests to the testimony of witnesses, and the proved conduct of a party in an action for divorce, in order to determine whether the case comes fairly within the spirit of the law invoked by him. He further said that the express language of our divorce law negatives the right of a husband to sue for a divorce where he had connived, directly or indirectly, in the adultery of the wife, whereon the libel is founded, and this for the reason that the spirit of the law forbids *either* party to succeed where the other's conduct was the natural, reasonable and intended consequence of the former's actions. A party so acting, he said, cannot honestly declare that his libel is filed "in sincerity and truth," and not "for the mere purpose of being freed" from the respondent, but, on the contrary, he who so acts commits a fraud upon the law, from which he can derive no advantage. Of course, what he said applies *mutatis mutandis* to the wife. If it be said that recrimination must be pleaded, as is

Mayberry v. Mayberry.

held in Jackson v. Jackson, 49 Pa. Superior Ct. 18, the answer is that that was an action in divorce tried by jury, and the pleadings did not raise condonation as an issue. In the instant case, although recrimination was not pleaded by the respondent, all the testimony tending to establish the bad faith, collusion and connivance of the libellant was introduced by herself. Moreover, in actions for divorce, equitable principles apply, and "to obtain relief in a court of equity, the plaintiff must come with clean hands, and this maxim applies in divorce cases as well as in others of equitable cognizance. This is the principle underlying the defences of connivance, collusion and recrimination, everywhere recognized and permitted: Bishop, Marr., Div. & Sep., §§ 201-409, inclusive; Wass v. Wass, 41 W. Va. 126; 23 S. E. Repr. 537; Pierce v. Pierce, 3 Pick. 299; 15 Am. Dec. 210; Myers v. Myers, 41 Barb. 115; Danforth v. Danforth, 105 Ill. 603. Conduct sufficient to bar relief need not be such as would give the defendant cause for a divorce. Remedy and divorce are different things. Conduct sometimes denies remedy for apparent rights. Inequitable conduct on the part of the plaintiff, though it does not amount to cause for a divorce, suffices to defeat his application for relief. A different conclusion would be violative of the fundamental principle just stated. Adherence to that principle is necessary to the protection of the interest the State has in every suit for divorce. Marriage was instituted for the good of society. Once incurred, the marital relation must be continued, if continuance thereof is reasonably practicable, for the same reason. Its solemnity and importance as a factor in civilization forbid severance of the relation for slight cause. To allow both parties to dissolve the relation at will, or one of them to effect dissolution by trickery or fraud, would tend directly to defeat all the high and necessary purposes for which marriage was ordained. These are some of the obvious reasons for the application of the equitable maxim and legal principle in numerous cases of denial of relief: Bacon v. Bacon, 68 W. Va. 747; 70 S. E. Repr. 762; Wass v. Wass, 41 W. Va. 126; Cooper v. Cooper, 17 Mich. 205; 97 Am. Dec. 182; McGowen v. McGowen, 52 Texas, 657; Simpson v. Simpson, 31 Mo. 24; Ingersoll v. Ingersoll, 49 Pa. 249; 88 Am. Dec. 500; Goldbeck v. Goldbeck, 18 N. J. Eq. 42; Lynch v. Lynch, 33 Md. 328; Gray v. Gray, 15 Ala. 779; Crow v. Crow, 23 Ala. 583:" Hall v. Hall, 34 L. R. A. (N. S.) 758, 761; 71 S. E. Repr. 103.

Do the facts in the instant case establish the connivance of the libellant in the acts of adultery charged against her husband? Connivance is an agreement or consent, indirectly given, that something unlawful shall be done by another: 1 Bouvier's Law Dictionary, 608. Connivance, it is said in Dennis v. Dennis, 34 L. R. A. (Conn.) 449, 458, is "the corrupt consenting of a married party to that conduct of the other of which afterwards complaint is made. It bars the right of divorce because no injury is received; for what a person has consented to, he cannot set up as an injury. Connivance is a thing of the intent resting in the mind. It is the consenting. But the connivance may be the passive permitting of the adultery or other misconduct, as well as the active procuring of its commission. If the mind consents, that is connivance: Ross v. Ross, L. R., 1 Prob. & Div. 734; Pierce v. Pierce, 3 Pick. 299; 15 Am. Dec. 210." Applying these definitions of connivance, we are convinced that the libellant, when she left Pottsville, Feb. 13, 1926, left with the intent resting in her mind that the adulterous relation between her husband and Miss Frew should continue. It is our further belief that this proceeding in divorce is the result of collusion between the libellant, her husband and Miss Frew.

We have carefully considered the report of the master and, for the reasons which we have stated, are constrained to reject his recommendation. The report of the master relieves neither the trial court nor the appeal court from the duty of reviewing the testimony and deciding upon the merits all cases of divorce: Nacrelli et al. v. Nacrelli, 288 Pa. 1.

The libel is dismissed, at the cost of the libellant.

From M. M. Burke, Shenandoah, Pa.