822 F.2d 1089
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
YUK SHAU MUI, Plaintiff-Appellant,
v.
Allen C. WING a/k/a Wing Quie Chin, Defendant-Appellee.
 No. 86-3673
 United States Court of Appeals, Sixth Circuit.
 July 10, 1987.
 
 Before KENNEDY and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Yuk Shau Mui appeals, for the second time, the district court's judgment dismissing her diversity action upon a finding that the parties entered into an agreement settling plaintiff's claims. For the reasons set forth below, we affirm.
 
 I.
 
 2
 Plaintiff, an elderly Chinese woman, filed this action on August 28, 1979, seeking past and future support for herself, back child support for her son, damages for slander arising out of defendant's denial that he and plaintiff were married, and civil damages for defendant's alleged violation of an Ohio statute outlawing bigamy. Plaintiff also filed a divorce case in state court in Illinois.
 
 
 3
 On June 14, 1983, a summary jury trial[1] was held in federal court, the jury finding insufficient evidence to establish that plaintiff and defendant were ever married. Settlement discussions were then held with the district court's participation, which concluded in a settlement between the parties. The action was accordingly terminated. On appeal, a panel of this court determined that plaintiff had raised sufficient doubts about the terms of the settlement agreement and plaintiff's assent thereto to warrant an evidentiary hearing, and accordingly remanded the case to the district court.
 
 
 4
 On remand, the evidentiary hearing was scheduled for March 5, 1986. On February 27, 1986, plaintiff's Illinois attorney[2] filed an amended motion to dismiss asserting that the settlement contemplated that the parties agree to obtain a divorce in Illinois, that such a divorce would be collusive, and therefore in violation of Illinois law. The motion to dismiss was accompanied by a letter of transmittal in which counsel asserted he had been unable to secure a qualified, unbiased interpreter that would allow participation in the evidentiary hearing in a meaningful manner. Accordingly, plaintiff did not appear at the hearing.
 
 
 5
 On March 5, 1986, the matter came on to be heard before the district court. After hearing argument and the testimony of defendant, the only witness to testify, the district court overruled the motion to dismiss, concluding that there was no basis for the motion. The district court further stated that 'what [plaintiff's counsel] considers to be an inability to secure an unbiased interpreter of course is no excuse for a nonappearance if it was his intention to appear. Certainly this Court could have provided an unbiased interpreter.' Finally, the district court found that the parties did enter into an agreement to settle and resolve their disputed claims, and that the settlement agreement provided that defendant would deposit $27,500.00 with the court, to be paid to plaintiff upon her delivering to the court a certified copy of a judgment of divorce. This appeal followed.
 
 II.
 A. Factual Findings
 
 6
 Plaintiff first argues there was insufficient evidence before the district court to support is findings (1) as to the terms of the settlement agreement and (2) that plaintiff understood, acknowledged, and accepted the settlement agreement. In our prior opinion, we determined there was a factual dispute as to whether plaintiff understood the settlement agreement in all its terms. Plaintiff argues that the transcript of the hearing conducted on remand reveals that no further evidence was adduced to support a finding that plaintiff understood, acknowledged, and accepted the agreement in all of its terms. Accordingly, plaintiff argues that there remains insufficient evidence to support the district court's findings.
 
 
 7
 Rule 52(a) provides that '[f]indings of fact shall not be set aside unless clearly erroneous.' Fed. R. Civ. P. 52(a). 'Thus the findings are presumptively correct. The burden is on the appellant to persuade the reviewing court that a finding was 'clearly erroneous." 9 C. Wright & A. Miller, Federal Practice & Procedure Sec. 2585, at 729 (1971) (footnotes omitted). In United States v. United States Gypsum Co., 333 U.S. 364 (1948), the Supreme Court articulated the familiar definition of 'clearly erroneous':
 
 
 8
 A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.
 
 
 9
 Id. at 395. More recently, the Supreme Court has instructed:
 
 
 10
 If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.
 
 
 11
 Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985).
 
 
 12
 As to the factual finding that the settlement agreement contains a provision that the $27,500 will be paid to plaintiff upon delivery of a certified judgment of divorce, plaintiff appears correct in asserting that the hearing produced little, if any, evidence to support such a finding. At no point did defendant expressly testify that the settlement agreement contained this provision. Rather, as plaintiff asserts, the apparent substance of defendant's testimony was that in return for the payment of $27,500, plaintiff would have no further claims against defendant.
 
 
 13
 Nonetheless, our review of the record 'in its entirety' convinces us that the district court's finding as to the terms of the settlement agreement is more than 'plausible.' First, we note the district court stated that his findings were 'based both on the evidence and the fact that settlement did take place in front of me and I did inquire of both parties and their lawyers . . . and . . . they both did agree to settle this case in accordance with the terms set forth in this judgment entry.'
 
 
 14
 Second, we believe the district court was entitled to draw an adverse inference from the failure of plaintiff to appear and testify. 'When it would be natural under the circumstances for a party . . . to take the stand himself as a witness in a civil case, . . . and he fails to do so, tradition has allowed his adversary to use this failure as the basis for invoking an adverse inference.' E. Cleary, McCormick On Evidence Sec. 272, at 804-05 (3d ed. 1984) (footnotes omitted). The 'classic' formulation of the rule is that 'if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable.' Graves v. United States, 150 U.S. 118, 121 (1893).
 
 
 15
 In order to invoke the inference,[3] it must be determined (1) that the uncalled witness is peculiarly within the control of one party; and (2) that the anticipated testimony will "elucidate the transaction." United States v. Blakemore, 489 F.2d 193, 195-96 (6th Cir. 1973) (quoting Wynn v. United States, 397 F.2d 621, 625 (D.C. Cir. 1967)). As a party to the action with personal knowledge of the settlement negotiations, plaintiff's absence obviously meets these requirements.[4]
 
 
 16
 Finally, we note that in the Amended Motion to Dismiss, which plaintiff's attorney apparently felt adequately set forth plaintiff's position, plaintiff asserted '[t]hat the alleged settlement entered into by the Plaintiff . . . contemplates . . . that the parties agree to obtain a divorce in . . . Illinois, and deliver a certified copy of said Judgment of Dissolution of Marriage to this Federal Court . . ..' In combination with plaintiff's inexcusable failure to appear at the evidentiary hearing, we believe the district court was entitled to infer from the motion that plaintiff was abandoning her position that the settlement did not contain the divorce provision, and instead is taking the position only that the provision is void.
 
 
 17
 Plaintiff also argues that the district court clearly erred in finding that she understood, acknowledged, and accepted the agreement. However, defendant testified that during the negotiations, plaintiff's attorney explained the settlement to plaintiff's son, who understands and speaks both English and plaintiff's Chinese dialect. According to defendant, plaintiff's son, as well as his wife, explained the settlement to plaintiff. Moreover, we restate our view that an inference can be drawn from plaintiff's motion, along with her failure to appear, that her only objection at the time of the hearing was that the divorce provision is illegal under Illinois law.
 
 
 18
 In conclusion, we find the district court's findings to be plausible, not internally inconsistent, and not contradicted by any evidence adduced at the evidentiary hearing. On this state of the record, we are not left with the definite and firm conviction that a mistake has been committed. Accordingly, we will uphold the district court's factual findings.
 
 B. Legality of Divorce Provision
 
 19
 In arguing that the settlement agreement is illegal under Illinois law, plaintiff relies on Ill. Rev. Stat. ch. 40, para. 408 (1985)[5] and O'Connell v. O'Connell, 27 Ill. App. 3d 204, 326 N.E.2d 200 (1975). In O'Connell, the plaintiff wife alleged mental cruelty on the husband's part as grounds for divorce. The answer admitted this allegation and at the hearing, defense counsel stated that such conduct was admitted. The trial court found this to amount to an agreement not to defend and collusion of the parties to obtain a divorce and accordingly denied the divorce.
 
 
 20
 On appeal, the Illinois Court of Appeals first determined that the trial court erred in finding collusion. The court interpreted the predecessor statute to paragraph 408 as only barring a divorce where the parties gave prior assent to the marital offenses for which the divorce was sought, as distinguished from agreeing that those acts had occurred in the past. Second, the court determined that the trial court erred in denying the divorce because of the agreement not to defend: 'We have found no authority which says that there is a duty to defend in divorce without regard to the merit of the issue.' 326 N.E.2d at 202. O'Connell, as well as paragraph 408, is therefore inapposite to the present case because the settlement in no way suggests an agreement by the parties to assent to marital offenses as a grounds for divorce.
 
 
 21
 In our view, the divorce provision in the settlement agreement does not violate any public policy that a divorce cannot be obtained by agreement. The settlement agreement does not require that the parties obtain a divorce, rather it conditions plaintiff's receipt of the $27,500 on her filing a certified copy of a divorce decree. Moreover, even if it were conceded that the agreement 'had the effect and operated and produced such a result,' Danforth v. Danforth, 105 Ill. 603, 608 (1883), we nevertheless believe that the peculiar facts of this case would not permit a finding that the agreement offends public policy.
 
 
 22
 Given that plaintiff instituted the divorce proceedings prior to entering into the settlement agreement, it cannot be said that the agreement induces her to obtain a divorce she otherwise would not obtain. Moreover, the record indicates that the reason defendant does not oppose the divorce in Illinois is because it is his position that the parties are not married. Rather than agreeing to a divorce, defendant's position can be more accurately stated as agreeing not to defend, which the O'Connell court stated was not absolutely impermissible. In this connection, we believe the policy concerns set forth in Danforth (preserving the marital relation and preventing a fraud upon the court) are not implicated in the present case by defendant's agreement not to defend, given his position that the parties are not married and given that his motivation is simply to insure that all claims pending against him by plaintiff be settled before she receives the proceeds of the settlement agreement. Accordingly, we affirm the district court's denial of plaintiff's motion to dismiss.
 
 C. Finality of Settlement Order
 
 23
 Plaintiff's final argument requires little discussion. With no citation to authority, plaintiff argues the 'settlement order in this cause being contingent upon the Plaintiff obtaining a divorce does not appear to be a final disposition of the case.' Plaintiff asserts that if, for any reason, she does not succeed in obtaining a divorce, the district court's order will not have disposed of the controversy.
 
 
 24
 Plaintiff is mistaken in asserting that the settlement order is not a final disposition of the litigation. 'A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' Catlin v. United States, 324 U.S. 229, 233 (1945). In the present case, there is nothing left for the district court to do but execute the judgment. That the settlement agreement which underlies the court's judgment may in part be executory does not change the fact that the litigation of the merits of plaintiff's claim is at an end. Plaintiff's failure to obtain the divorce decree will not have the effect of reviving the present action; rather, it will merely prevent plaintiff from collecting the $27,500. The district court's judgment dismissing plaintiff's claim will remain final.
 
 III.
 
 25
 Accordingly, the judgment of the district court is AFFIRMED; however, we make no determination as to any preclusive effect of our decision.
 
 
 26
 CONTIE, Senior Circuit Judge, dissenting.
 
 
 27
 I respectfully dissent from the majority's decision for two reasons. First, I believe that the district court lacked subject matter jurisdiction over the instant domestic relations case. Second, even if the court had jurisdiction to hear the case, I believe that the settlement agreement accepted by the court is invalid under Illinois law because it represents a collusive agreement to not defend against a divorce action. My reasons for these views follow.
 
 
 28
 Plaintiff asserted four causes of action in her complaint. In the first one, she alleged that defendant had failed to provide for her support since abandoning her in China in 1932, one year after marrying her. For relief, plaintiff sought $470,000 in back support and an undetermined amount of future support. Plaintiff's second cause of action sought $50,000 in back support for defendant's failure to provide support for their son from 1932 to 1952. These two causes of action obviously involve solely domestic relations issues, and as such could not be brought before a federal court.
 
 
 29
 The Supreme Court has repeatedly recognized that domestic relations matters are purely the province of state law. McCarty v. McCarty, 453 U.S. 210, 220 (1981). Because the national government has no power to regulate the dissolution of a marriage, or any other aspect of domestic relations law, federal courts have no jurisdiction over actions involving divorce and alimony. Popovici v. Agler, 280 U.S. 379, 383 (1930). Only state courts have jurisdiction over domestic relations matters, and their jurisdiction is statutory in nature. This principle is well-established under Illinois law, where the jurisdiction of its courts of equity to decide divorce matters is conferred exclusively by statute. Josic v. Josic, 78 Ill. App. 3d 347 (1979); Chodl v. Chodl, 37 Ill. App. 3d 52 (1976). Thus, if a court is not empowered by statute to hear an Illinois domestic relations matter, the court simply cannot exercise jurisdiction over the action.
 
 
 30
 I believe that these principles indicate that the district court below was without jurisdiction to consider the domestic relations matters raised by plaintiff. Since the court, in my opinion, lacked jurisdiction over the subject matter of plaintiff's case, the court was powerless to accept the parties' settlement agreement. The problem caused by the court's acceptance of that agreement is clear--a federal court has entered what purports to be a final and binding order involving parties over which the court lacked jurisdiction. Should plaintiff subsequently bring a state domestic relations action based on the same allegations raised herein and obtain personal jurisdiction over defendant, defendant would likely argue that plaintiff is precluded from bringing the action by principles of res judicata. Defendant conceded as much at oral argument before this court. If such a scenario were to arise, the state court would be faced with the unsavory task of deciding whether the district court lacked jurisdiction to enter a final, binding order in order to determine whether the district court's order should be given preclusive effect or disregarded. Consequently, I would not affirm the district court's judgment but would instead reverse on the ground that the court erred in asserting jurisdiction over the case.
 
 
 31
 Even assuming that the district court properly exercised jurisdiction over the case, I would still reverse because I believe that the court erred in accepting the parties' settlement agreement. Illinois law expressly prohibits parties from obtaining a divorce by collusion. Ill. Rev. Stat. Ch. 40 p408. Accordingly, Illinois courts have 'long held that parties [can] not obtain a divorce by agreement or by . . . combining to procure a divorce.' O'Connell v. O'Connell, 27 Ill. App. 3d 204, 206 (1975). See also Nogle v. Nogle, 53 Ill. App. 2d 457, 462 (1964) ('Settlement agreements between a husband and wife are void as against public policy where it is apparent that the contract was entered into for the purpose of stimulating a divorce between the parties or for the purpose of purchasing a decree of separation, or where it amounts to collusion between the parties to secure a decree of divorce.'). Similarly, it is the 'unquestioned law' in Illinois that agreements to not defend against a divorce action are void. Danforth v. Danforth, 105 Ill. 603, 607 (1883).
 
 
 32
 These well-settled principles of Illinois law are based on the notion that parties will not be permitted to practice fraud upon a court in obtaining a divorce decree. An agreement to not defend gives rise to fraud because a potentially valid defense may be obscured from the court's attention. Courts hearing divorce actions have a well-recognized duty to refuse to grant a divorce if there are no legal grounds for it or if there is a valid defense to the divorce. If a court is aware of a meritorious defense which the defendant has not asserted, the court must raise the defense sua sponte. Consequently, a person who agrees to conceal a valid defense from a court in order to facilitate a divorce decree necessarily commits fraud upon that court, which renders such an agreement unenforceable.
 
 
 33
 I would hold that the settlement agreement in the present case is invalid under Illinois law because it constitutes an agreement by defendant to not defend against plaintiff's pending Illinois divorce action. Prior to entering into the settlement agreement, defendant had steadfastly maintained that he was never married to plaintiff.[6] If true, this fact would preclude a court from granting plaintiff a divorce from defendant since there can be no divorce decree ending a marriage which never existed. Thus, defendant had a potentially valid defense to plaintiff's divorce action. However, defendant impliedly agreed to not assert that defense when he entered into the settlement agreement and agreed to pay plaintiff $27,500 as soon as she obtained a judgment of divorce in her pending divorce action. This agreement indicates defendant's intent to defraud the Illinois court by concealing a potentially valid reason why such a judgment of divorce cannot issue. The agreement is therefore collusive and void under Illinois law, and I would vacate the district court's acceptance of such an invalid agreement.
 
 
 34
 The same result was reached under analogous circumstances in Danforth v. Danforth, 105 Ill. 603 (1883). In Danforth, parties to a pending divorce action entered into a stipulation whereby the defendant agreed to pay the plaintiff a sum of money whenever the plaintiff produced a certified copy of a divorce decree. Although the plaintiff obtained the divorce decree, she subsequently sought to have the decree set aside. The Illinois Supreme Court held that the decree should be set aside because it was obtained in violation of the Illinois rule of law prohibiting parties from obtaining a divorce by collusion or by agreement to not defend.
 
 
 35
 The majority's reliance on the O'Connell decision in distinguishing Danforth is misplaced. Although the O'Connell court stated that it had 'found no authority which says that there is a duty to defend in divorce without regard to the merit of the issue,' 27 Ill. App. 3d at 207, this statement does not imply, as the majority intimates, that certain agreements to not raise valid defenses may be permissible. Reading the statement in context, it stands only for the proposition that a party has no duty to assert a meritless defense to a divorce action. The record in O'Connell showed no facts 'which, if proven, would be a bar to a divorce.' 27 Ill. App. 3d at 206. Accordingly, the agreement to not defend was not an attempt to conceal a meritorious defense from the divorce court. Thus, the import of O'Connell is that a party may agree to not raise a defense to a divorce action, but only if that defense is known to be without merit. Such an agreement is simply not collusive because it does not constitute an attempt to fraudulently procure a divorce decree by concealing a valid defense to granting the decree.
 
 
 36
 It is an entirely different situation where, as in the instant case, the agreement to not defend conceals a meriotrious defense. In light of defendant's claim that he was never married to plaintiff, the record in this case contains an allegation which, if proven, would be a bar to granting a divorce decree. Thus, the agreement by defendant to not defend constitutes a collusive agreement to commit fraud upon the Illinois court. Such an agreement is void under Illinois law and O'Connell does not hold otherwise.
 
 
 37
 In sum, I believe that two independent grounds exist for vacating the order of the district court which accepted the settlement agreement. Accordingly, I dissent from the majority's affirmance of the district court.
 
 
 
 [1]
 Summary jury trials are described in Lambros, The Summary Jury Trial, 103 F.R.D. 461 (1984) (Report by the Honorable Thomas D. Lambros, United States District Judge, Northern District, Ohio, to the Judicial Conference of the United States.)
 
 
 [2]
 Although the docket sheet shows an Ohio attorney of record, both of plaintiff's appeals have been prosecuted by her Illinois attorney, who apparently has taken primary control of the case. Plaintiff's Ohio attorney, however, appeared at all proceedings in the district court, including the March 5, 1986, hearing
 
 
 [3]
 See United States v. Stulga, 584 F.2d 142, 145 n.1 (6th Cir. 1978) ('Since Graves, courts have generally recognized that an inference rather than a presumption of unfavorable testimony is raised in such a situation.')
 
 
 [4]
 Given the failure to move for the appointment of an interpreter, see Fed. R. Civ. P. 43(f), plaintiff's assertion that her nonappearance was justified by her inability to obtain an 'unbiased' interpreter is patently without merit
 
 
 [5]
 Chapter 40, paragraph 408 provides:
 Collusion--Assent or consent of petitioner. If it appears, to the satisfaction of the court, that the injury complained of was occasioned by collusion of the parties, or done with the assent of the petitioner for the purpose of obtaining a dissolution of marriage or legal separation or declaration of invalidity of marriage, or that the petitioner was consenting thereto, then no dissolution of marriage or legal separation or declaration of invalidity of marriage may be adjudged.
 
 
 [6]
 In fact, it was acknowledged at oral argument before this court that defendant had entered a 'special appearance' in order to assert his claim that he and plaintiff were never married